UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| DANIEL METAGUE, on behalf of himself and all others similarly situated, | Case No: _____ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| Woodbolt Distribution, LLC, d/b/a Nutrabolt, 3891 South Traditions Drive Bryan, TX 77807 | |
| Defendant. | |

Plaintiff Daniel Metague ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this action against Woodbolt Distribution, LLC, d/b/a Nutrabolt (hereafter referred to as ("Woodbolt"). For his Complaint, Plaintiff alleges the following upon personal knowledge as to his own acts and experiences and to all other information based on the investigation conducted by counsel as to all other allegations:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings claims under the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law §§ 13-101, et seq., against Defendant Woodbolt Distribution, LLC ("Woodbolt" or "Defendant") as a class action on behalf of himself and on behalf of members of the Class defined below.

2.      This action arises from the deceptive practices of Defendant in its manufacture and sale of nutritional powders containing branched-chain amino acids labeled "XTEND

Energy" and advertised as containing "0 calories." The XTEND Energy line of products includes Mango Madness, Pink Lemonade, Kiwi Strawberry, Watermelon Explosion, Freedom Ice, Blue Raspberry Ice, Knockout Fruit Punch, Lemon Lime Squeeze, Strawberry Mango, and Glacial Grape (the "Product").

3.      Woodbolt's representations regarding the number of calories in the Product is deceptive. Independent testing revealed that the Product contained approximately 366 calories per 100 grams. Assuming a serving size of 11.6 grams, each serving contains approximately 42 calories, significantly more than the "0" calories as advertised. Maryland consumers of Defendant's products, such as Plaintiff, have been, and continue to be, misled into purchasing Woodbolt's nutritional powders with the belief that they do not contain any calories.

4.      Woodbolt continued to sell its products with misleading labels despite knowing the inaccuracy of such statements. Woodbolt chose and continues to choose financial gain at the expense of consumers by concealing and omitting disclosure of this critical misrepresentation to consumers, who, like Plaintiff, purchase the Product for personal use.

## PARTIES

5.      Plaintiff Daniel Metague is a citizen and resident of Montgomery County, Maryland. Starting in or around August 2018, Plaintiff purchased the Product through Amazon.com after viewing pictures of its label, which advertised that it contained "0 calories." Independent testing demonstrates that the Product contained substantially more calories than Defendant advertised on the Product's label.

6.      Defendant Woodbolt d/b/a "Nutrabolt" is a limited liability corporation with its principal office in the State of Texas.  Woodbolt makes and distributes health supplements,

energy drinks, and nutritional protein powders, throughout the United States and specifically to consumers in the state of Maryland.

7.      The Product is sold and purchased for personal use and consumption in the State of Maryland.

## JURISDICTION AND VENUE

8.      This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. At least one member of the proposed class is a citizen of a different state from Woodbolt, the number of proposed Class Members exceeds 100, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs.  28 U.S.C. § 1332(d)(2)(A).

9.      This Court has general and specific jurisdiction over the Defendant because Defendant Woodbolt has sufficient minimum contacts with Maryland and within the Southern Division of Maryland to establish Defendant's presence in Maryland, and certain material acts upon which this suit is based occurred within the Southern Division of Maryland. Woodbolt does substantial business in the State of Maryland and within this Judicial District, is registered to, and is doing business within the State of Maryland, and otherwise maintains requisite minimum contacts with the State of Maryland. Specifically, Woodbolt distributed and sold the Product in Maryland.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the Southern District of Maryland and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial District, including that Plaintiff purchased and used the Product in Maryland. Additionally, Woodbolt distributes the Product in this District, receives substantial compensation and profits

from the sale and lease of Product in this District, and has and continues to conceal and make material omissions in this District.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS
### THE SALE OF UNHEALTHY CALORIE-LADEN PROTEIN POWDERS AS A DECEPTIVE PRACTICE

11.     Each of the preceding paragraphs is incorporated by reference herein.

12.     Advertisements, packages, and labels should provide consumers with accurate information as to the nature and quality of a product's contents and should assist in making informed decisions. When a company misrepresents material information about a product, it is deceptive and misleading to reasonable consumers.

13.     On its website and on every Product's packaging, Woodbolt prominently represents that the Product contains "0 calories" per serving.[1]

 

---

[1] See https://officialxtend.com/products/xtend-mango-madness, https://officialxtend.com/products/xtend-pink-lemonade-2018, https://officialxtend.com/products/xtend-strawberry-kiwi-splash, https://officialxtend.com/products/xtend-watermelon-explosion, https://officialxtend.com/products/xtend-freedom-ice, https://officialxtend.com/products/xtend-blue-raspberry-ice, https://officialxtend.com/products/xtend-knockout-fruit-punch, https://officialxtend.com/products/xtend-lemon-lime-squeeze, https://officialxtend.com/products/xtend-strawberry-mango, https://officialxtend.com/products/xtend-glacial-grape.

















14.     Independent laboratory testing has revealed that the Product tested contained approximately 366 calories per 100 grams. Assuming a serving size consists of 11.6 grams, each serving contains approximately 42 calories, far more calories than the "0" represented prominently on the Product's packaging and in Woodbolt's advertising and promotional materials.

15.     Woodbolt's sale of the Product deceives consumers because the front of the package touts the absence of any calories per serving of its contents.

16.     Woodbolt's advertising deceives consumers by stating that the Product contains "0 calories" per serving.

17.     Woodbolt's sale of the Product is deceptive to reasonable consumers, including Mr. Metague, because there is no practical way for them to know prior to purchase that the Product is laden with calories despite being marketed as containing none per serving.

## CLASS ACTION ALLEGATIONS

18.     Under Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4), Plaintiff intends to seek certification of a Nationwide Class consisting of:

> All persons who purchased the Product in the United States from
>
> June 5, 2017, through the present.

19.     Plaintiff also intends to seek certification of a Maryland Sub-Class consisting of:

> All natural persons who purchased the Product in Maryland from
>
> June 5, 2017, through the present.

20.     Plaintiff reserves the right to re-define the Class and Sub-Class (the "Classes") at the conclusion of discovery as to class certification.

21.     Collectively, unless otherwise so stated, the above-defined classes and subclasses are referred to herein as the "Classes."

22.     Excluded from the Class and the Sub-Class are Defendant, any affiliate, parent, or subsidiary of Woodbolt; any entity in which Woodbolt has a controlling interest; any officer, director, or employee of Woodbolt; any successor or assign of Woodbolt; anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned, his or his spouse, and all persons within the third degree of relationship to either of them and the spouses of such persons.

**NUMEROSITY**

23.     The members of the classes are so numerous that joinder of all members is impracticable.  While The exact number of Class members is unknown as such information is in the exclusive control of Defendants. Plaintiff, however, believes that the Class encompasses thousands of individuals who are geographically dispersed throughout the nation. Therefore, the number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

**COMMON QUESTIONS OF LAW AND FACT PREDOMINATE**

24.     There is a well-defined community of interest in the questions of law and fact affecting the Class Members.

25.     There are questions of law and fact common to all members of each Class: specifically, Plaintiff's claims arise from the same event or practice or course of conduct by the Defendant that gives rise to those claims of the putative classes, and Plaintiff's claims are based upon the same legal theories as those of the putative classes. The Defendant has engaged in a pattern and practice, in violation of the law, of misrepresenting the number of calories in the

Product. The resolution of this issue—to wit, whether Defendant knowingly sold the Product with misleading labels and did not inform Plaintiff and Class Members—is a common question of fact and law that will affect all members of the Classes in the same manner.

26.     The questions of law and fact common to the Classes predominate over questions that may affect individual members and include:

A.  The nature, scope, and operation of Defendant's wrongful practices;

B.  The uniformity of the advertisements created through Defendant's marketing materials;

C.  Whether Woodbolt misrepresented the number of calories in the Product;

D.  Whether Defendant engaged in fraudulent practices as to the Class Members;

E.  Whether Woodbolt violated state consumer protection laws by misrepresenting the number of calories in the Product;

F.  Whether Defendant's conduct amounts to violations of the Maryland Consumer Protection Act;

G.  Whether Woodbolt deliberately misrepresented material facts to Plaintiff and the Class Members; and

H.  Whether members of the Classes may be notified and warned about the contents of the Product and have the entry of final and injunctive relief compelling Woodbolt to stop its misrepresentations;

I.  Whether Plaintiff and the Classes suffered damages because of Defendant's misconduct and if so, the proper measure of damages.

## TYPICALITY

27.     The claims and defenses of Mr. Metague are representative of the Class Members he seeks to represent and typical of the claims of the Classes because the Plaintiff and the Class Members all purchased the Product. Plaintiff, like all Class Members, purchased the Product when it was advertised by Defendant as containing 0 calories.

## ADEQUACY OF REPRESENTATION

28.     Mr. Metague will fairly and adequately assert and protect the interests of the proposed class because:

A.  Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the classes;

B.  Plaintiff has no conflict of interest that will interfere with the maintenance of this class action; and

C.  Plaintiff has suffered consumer-related injuries and damages.

## SUPERIORITY

29.     A class action provides a fair and efficient method for the adjudication of the instant controversy for the following reasons:

a.  The common questions of law and fact set forth above predominate over questions affecting only individual Class Members;

b.  The proposed classes are each so numerous that joinder would prove impracticable. The proposed classes, however, are not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the class unmanageable.

c.   Prosecution of separate actions by individual members of the class would risk inconsistent and varying adjudications against Defendant;

d.   The claims of the individual Class Members are small in relation to the expenses of litigation, making a class action the only procedure in which Class Members can, as a practical matter, recover for the damages done to them by Woodbolt.

e.   A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

30.   In the alternative, the proposed classes may be certified because:

a.   the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication regarding individual Class Members, which would establish incompatible standards of conduct for Woodbolt;

b.   the prosecution of separate actions by individual Class Members would create a risk of adjudications dispositive of the interests of other Class Members, not parties to the adjudications and substantially impair or impede their ability to protect their interests; and

c.   Woodbolt has acted or refused to act on grounds generally applicable to the proposed class, which justifies final and injunctive relief for the members of the proposed class as a whole.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

31.   Defendant Woodbolt Distribution, LLC has possessed exclusive knowledge about the number of calories contained in the Product, including from its customer complaint and warranty records, internal emails, reports, analyses, and assessment of engineers, that is unavailable to Plaintiff and the proposed Class Members.

32.     Throughout the time period relevant to this action, Defendant concealed the contents of the Product. As a result, neither Plaintiff nor the absent Class Members could have discovered the number of calories actually contained in the Product, even upon reasonable exercise of diligence.

33.     Despite its knowledge of the above, Defendant failed to disclose and concealed and continues to conceal, critical information from Plaintiff and absent Class Members, even though, at any point in time, it could have communicated material information through individual correspondence, media releases, or other means.

34.     Plaintiff and Class members relied on Defendant to disclose the number of calories in the Product because the contents could not be discovered through reasonable efforts by Plaintiff and the Class Members.

35.     Thus, the running all applicable statutes of limitations have been suspended with respect to any claims that Plaintiff and the Class members have sustained as a result of Defendant's misrepresentations and omissions, by virtue of the fraudulent concealment doctrine.

36.     Woodbolt was under a continuous duty to Plaintiff and the Class Members the true nature, quality, and character of its Product. However, Defendant concealed the true nature, quality, and character of the Product, as described herein. Based upon the foregoing, Woodbolt is estopped from relying on any statutes of limitations in defense of this action.

37.     Woodbolt is estopped from relying on any statutes of limitation or repose due to its acts of concealment. Defendant knew about the number of calories contained in the Product for years but concealed it and/or failed to alert purchasers or potential purchasers. Defendant maintained exclusive control over information concerning the number of calories in the Product;

Plaintiff and Class Members. Defendant is therefore estopped from relying on any statutes of limitations or repose that might otherwise apply to the claims asserted herein.

## IMPLIED WARRANTIES

38.     Woodbolt also sold the Product to Class Members under implied warranties of merchantability and fitness. Woodbolt impliedly warranted the Product to be merchantable, fit for the ordinary purposes for which they were intended to be used, including the guarantee that they were in a safe and non-defective condition for use by their purchasers for the ordinary purpose for which they were intended and were not otherwise injurious. Woodbolt is under a duty to design, manufacture, label, and test the Product to make them suitable for the ordinary purposes of their use—a dietary supplement that aids weight loss.

39.     Woodbolt breached its warranties for the Product as a result of the number of calories actually contained in the Product; misrepresenting the number of calories contained in the Product by advertising that the Product contains "0 calories"; failing to disclose the true number of calories contained in the Product; and otherwise inadequately marketing the product as a dietary supplement that aids in weight loss.

40.     In breach of Woodbolt's implied warranties, the Product is defective, unfit for the ordinary purposes for which it was intended to be used, and not merchantable.

## FIRST CLAIM FOR RELIEF
### Breach of Implied Warranty
### (Brought on behalf of the Nationwide Class)

41.     Plaintiff, individually and for the Nationwide Class, hereby incorporates each and every allegation as though fully set forth herein. In the alternative, Plaintiff brings this claim on behalf of the Maryland Sub-Class.

42.     When Plaintiff and the Class Members purchased the Product, they were promised a dietary supplement that would not only contain "0 calories," but also would be adequately labeled, pass without objection in the trade, and be fit for the ordinary purposes for which dietary supplement powders are used.

43.     Defendant knew that its Product would be purchased by consumers seeking weight loss and developed the Product for consumers' benefit. Defendant knew that the Product would be sold by retailers for the ultimate use by consumers. Accordingly, direct privity is nor required to bring this cause of action.

44.     Because the Product contains significantly more than the "0 calories" that were promised, the Product purchased and used by Plaintiff, and the Class Members is not merchantable. Woodbolt breached the implied warranty of merchantability in the sale of the Product to Plaintiff and the Class Members in that the Product was not fit for their ordinary purpose and not merchantable.

45.     Woodbolt has been on notice of these issues and misrepresentations through its own internal research and development process, as well as from the lawsuit *Hackman v. Woodbolt Distribution, LLC*, 2019 CA 007822 B, filed in the Superior Court for the District of Columbia. Woodbolt has had the opportunity to correct the number of calories in the Product or correct its misrepresentations but has chosen not to do so. When confronted with the allegations herein, Defendant elected to continue to sell its Product without disclosing its omissions.

46.     As a direct and proximate result of Woodbolt's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff and Class Members did not receive the benefit of their bargains.

47.     Plaintiff and the Class Members are entitled to damages and other legal and equitable relief, including the purchase price of the Product, overpayment, or loss of benefit of the bargain.

### SECOND CLAIM FOR RELIEF
### Fraud by Concealment and Omission
### (Brought on behalf of the Nationwide Class)

48.     Plaintiff, individually and for the Nationwide Class, hereby incorporates each and every allegation as though fully set forth herein. In the alternative, Plaintiff brings this claim on behalf of the Maryland Sub-Class.

49.     At all relevant times, Woodbolt was engaged in the business of designing, manufacturing, and selling the Product.

50.     Defendant, acting through its representatives or agents, delivered the Product to distributors, computer manufacturers, and various other distribution channels.

51.     Defendant willfully, falsely, and knowingly omitted material facts regarding the quality and character of the Product.

52.     Rather than disclosing material facts to Class Members, including but not limited to, that the Product does not contain "0 calories," Woodbolt concealed material information related to the Product's calorie content, and continued manufacturing and selling the Product without making any disclosures.

53.     Woodbolt omitted and misrepresented the number of calories in the Product to drive up sales and maintain its market power, as consumers would not purchase the Product, or would pay substantially less for them, had consumers known the truth.

54.     Plaintiff and Class Members could not have discovered the actual contents of the Product on their own, Woodbolt was in the exclusive possession of such information.

55.     Although Woodbolt had a duty to ensure the accuracy of its Product and to ensure accuracy of information regarding the Product's health benefits, it did not fulfill these duties.

56.     Plaintiff and Class Members sustained injury due to the purchase of the Product containing more than the "0 calories" advertised by Defendant. Plaintiffs and Class Members are entitled to recover full refunds for the Product, or they are entitled to damages for loss of the benefit of the bargain or the diminished value of the Product, amounts to be determined at trial.

57.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and Class Members; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future. Punitive damages, if assessed, shall be determined according to proof at trial that Defendant's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights, and in part to enrich itself at the expense of consumers. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

### THIRD CLAIM FOR RELIEF
### Equitable Injunctive and Declaratory Relief
### (Brought on behalf of the Maryland Sub-Class)

58.     Plaintiff, individually and for the Maryland Sub-Class, hereby incorporates each and every allegation as though fully set forth herein.

59.     Woodbolt is under a continuing duty to inform its customers of the nature and existence of calories in the Product that it has sold.

60.     Plaintiff, members of the Maryland Sub-Class, and the public will suffer irreparable harm if Woodbolt is not ordered to seize misrepresenting and omitting material information regarding the number of calories contained in the Product.

61.     Injunctive relief is particularly necessary in this case because: (1) Plaintiff and the absent Class members desire to purchase products with the same qualities and attributes as Defendant advertised the Produce to have; (2) if Plaintiff actually manufactured the Produce with the amount of calories advertised, Plaintiff would purchase the Product; (3) Plaintiff does not, however, have the ability to determine whether Defendant's representations concerning the Product will be truthful if they purchase the Product. Indeed, Plaintiff and the Class members may in the future want to purchase the Product, but they expect that Defendant will continue to misrepresent or conceal the amount of calories in the Product.

**FOURTH CAUSE OF ACTION**
**Violation of the Maryland Consumer Protection Act ("MCPA")**
**Md. Code Ann., Commercial Law § 13-101, et seq.**
**(Brought on behalf of the Maryland Sub-Class)**

62.     Plaintiff, individually and for the Maryland Sub-Class, hereby incorporates each and every allegation as though fully set forth herein.

63.     Woodbolt is a person as defined by Md. Comm Code § 13-101(h),

64.     Woodbolt's conduct as alleged herein relates to "sales," "offers for sale," or "bailment" as defined by Md. Comm. Code § 13-101(i) and § 13-303.

65.     Plaintiff and Class Members who purchased the Product are "consumers" as defined by Md. Comm Code § 13-101(c).

66.     Woodbolt advertises, offers, or sells "consumer goods" as defined by Md. Comm. Code § 13-101(d).

67.     The MCPA prohibits the use of any "unfair or deceptive trade practice" in the sale or lease of any consumer goods or services.

68.     Woodbolt engaged in unfair and deceptive trade practices, in violation of Md. Comm. Code § 13-301, including (a) false or misleading oral or written representations that have

the capacity, tendency, or effect of deceiving or misleading consumers; (b) representing that consumer goods or services have a characteristic that they do not have; (c) representing that consumer goods or services are of a particular standard, quality, or grade that they are not; (d) failing to state a material fact where the failure deceives or tends to deceive; (e) advertising or offering consumer goods or services without intent to sell, lease, or rent them as advertised or offered; (f) deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of consumer goods or services or the subsequent performance with respect to an agreement, sale lease or rental.

69.     Woodbolt violated the MCPA by concealing, suppressing, or omitting material facts regarding the Product, including, but not limited to, the number of calories it contains. This concealed or omitted information is the type of information upon which a consumer would be expected to rely on in deciding whether to purchase or how much to pay for the Product.

70.     Woodbolt concealed, suppressed or omitted these material facts in conducting trade and commerce with the intent that Plaintiff and the Maryland Sub-Class Members would rely on the omissions in the purchase of the Product.

71.     To this day, Woodbolt continues to violate the MCPA by actively concealing the number of calories in the Product.

72.     Woodbolt intended that Plaintiff and the Maryland Sub-Class Members would rely on its concealment and omission of material facts, which occurred in the course of conduct involving trade and commerce.

73.     Defendant's practices, acts, policies, and course of conduct violated MCPA's prohibition on unfair and deceptive conduct in that:

a.   At the time of sale, Defendant knowingly and intentionally misrepresented and omitted the number of calories in the Product.

b.   Thereafter, Defendant failed to disclose its misrepresentations to Plaintiff and the Class Members, either through warnings or recall notices, and/or actively concealed from them that the Product contained more than "0 calories," even though the company knew of the contents of the Product: (1) at the time of manufacture, when it created the recipe for the Product and (2) from the claims alleged in the case *Hackman v. Woodbolt Distribution, LLC*, 2019 CA 007822 B filed in the Superior Court for the District of Columbia.

c.   Based on these and, upon information and belief, other internal studies and investigations, Defendant knew with certainty that it was misrepresenting the contents of the Product.

74.   Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Product to the consuming public and to represent that it would serve its intended purpose as a dietary supplement to lose weight, merchantable, and not defective, despite Defendant's knowledge that the Product did not contain the advertised number of calories.

75.   Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers.  Defendant has, through knowing, intentional, material omissions, concealed the true nature of the Product.

76.   Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit and are injuries of a nature that they could not have been reasonably avoided by consumers.

77.     As a direct and proximate result of these unfair acts or practices, Plaintiff and Class Members have been damaged because they purchased Product they otherwise would not have, paid more for Product than they otherwise would have, and are left with a Product of diminished value and utility because of the number of calories it contains. Meanwhile, Woodbolt has sold more of the Product than it otherwise could have and charged inflated prices for the Product, thereby unjustly enriching itself.

78.     Plaintiff and the Maryland Sub-Class members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, and attorneys' fees and costs.

79.     Plaintiff and the Maryland Sub-Class Members also seek appropriate equitable relief, including an order requiring Woodbolt to adequately disclose the contents of the Product and an order enjoining Woodbolt from misrepresenting the Product as containing "0 calories."

### FIFTH CAUSE OF ACTION
### Unjust Enrichment
### (Nationwide Class and Maryland Sub-Class)

80.     Plaintiff, individually and for the Nationwide Class and Maryland Sub-Class, hereby incorporates each and every allegation as though fully set forth herein.

81.     This claim is asserted in the alternative on behalf of Plaintiff and the members of the Classes to the extent that there is any determination that Plaintiff does not have standing to assert any contractual claims asserted against Woodbolt on the alleged basis of an absence of contractual privity or otherwise.

82.     By its wrongful acts and omissions described herein, including selling the Product with more than the "0 calories" advertised, Woodbolt was unjustly enriched at the expense of Plaintiff and the Classes.

83. Plaintiff and the Class members conferred a benefit upon Woodbolt by purchasing the Product at the full price. Under the circumstances, it would be inequitable for Woodbolt to retain the profits, benefits, and other compensation obtained through its wrongful conduct in manufacturing, marketing and selling the Product with the misrepresentation that the Product contains "0 calories" to Plaintiff and the Class Members.

84. Plaintiff and Class Members are entitled to damages in the amount Defendant was unjustly enriched, to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Violation of the Unfair and Unlawful Prongs of Unfair and**
**Deceptive Trade Practices Statutes**
**(Brought on behalf of Nationwide Class)**

85. Plaintiff, individually and for the Nationwide Class, hereby incorporates each and every allegation as though fully set forth herein.

86. Plaintiffs and Class Members who purchased the Product are "consumers" under their states' unfair and deceptive practices statutes, which are identified with specificity for this count in Appendix A.

87. The Product that Plaintiff and Class Members purchased are "goods" within the meaning of these states' unfair and deceptive practices statutes.

88. Woodbolt has engaged and continues to engage, in unfair, unlawful, and deceptive trade practices in Maryland and other states by engaging in the unfair, unlawful, and deceptive business practices outlined herein. Woodbolt participated in a marketing campaign that deceived consumers. In particular, Defendant has knowingly and willfully engaged, and continues to engage in, unfair, unlawful and deceptive trade practices in that:

   a. At the time of sale, Defendant knowingly and intentionally misrepresented and omitted the number of calories in the Product.

21

b.    Thereafter, Defendant failed to disclose its misrepresentations to Plaintiff and the Class Members, either through warnings or recall notices, and/or actively concealed from them that the Product contained more than "0 calories," even though the company knew of such contents: (1) at the time of manufacture, when it created the recipe for the Product and (2) from the complaints alleged in the case *Hackman v. Woodbolt Distribution, LLC*, 2019 CA 007822 B filed in the Superior Court for the District of Columbia.

c.    Based on these and, upon information and belief, other internal studies and investigations, Defendant knew with certainty that it was misrepresenting the contents of the Product.

89.    Woodbolt's unfair acts and practices led consumers to falsely believe that the Product contained "0 calories."

90.    Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers.

91.    Defendant's acts and omissions are also unfair in that they caused injury to consumers far more than any conceivable benefit and are injuries of a nature that they could not have been reasonably avoided by consumers.

92.    Until the present, Defendant has knowingly accepted the benefits of its unfair and unlawful conduct in the form of profits from the sale of the Product.

93.    As a result of the unfair and unlawful acts described herein, Plaintiff and Class Members of the Nationwide Class purchased and used the Product when they would not otherwise have done so and suffered economic losses consisting of the cost of purchase of the Product.

94.     Plaintiff and Class Members relied to their detriment on Defendant's unfair, unlawful, and deceptive business practices. Had Plaintiff and Class Members been adequately informed rather than intentionally deceived by Defendant, each would have acted differently by, without limitation, not purchasing the Product.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays for judgment as follows:

     a.   For an order certifying the proposed Classes and appointing Plaintiff and Plaintiff's counsel to represent the Classes;

     b.   For an order awarding Plaintiff and Class Members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

     c.   For an order awarding Plaintiff and the Class Members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

     d.   For an order or orders requiring Woodbolt to adequately disclose the number of calories in the Product and enjoining Woodbolt from misrepresenting that the Product contains "0 calories";

     e.   For an order awarding Plaintiff and the Class Members pre-judgment and post-judgment interest;

     f.   For an order awarding Plaintiff and Class Members reasonable attorney fees and costs of suit, including expert witness fees; and

     g.   For an order awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiff and Classes hereby respectfully demand trial by jury of all issues triable by right.

Dated: July 28, 2020                                         Respectfully submitted,

Nicholas A. Migliaccio
(Maryland Federal Bar No. 29077)
Jason S. Rathod
(Maryland Federal Bar No. 18424)
Erick J. Quezada, Esq.*
412 H Street NE, Suite 302
Washington, DC 20002
Tel. (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
equezada@classalwdc.com

D. Aaron Rihn, Esq.*
Robert Pierce & Associates, P.C.
2500 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
Tel. (412) 281-7229 (Tel.)
arihn@peircelaw.com

Robert Mackey, Esq. *
Law Offices of Robert Mackey
P.O. Box 279
Sewickley PA 15143
Tel. (412) 370-9110
bobmackeyesq@aol.com

* pro hac vice admission to be sought

*Attorneys for Plaintiff and Putative Class*

**APPENDIX A**
**CHART OF 32 STATES AND WASHINGTON D.C.'S**
**UNFAIR AND UNLAWFUL TRADE PRACTICES STATUTES**

SIXTH CAUSE OF ACTION
Violation of the Unfair and Unlawful Prongs of Unfair and
Deceptive Trade Practices Statutes
(Brought on behalf of Nationwide Class)

| STATE | STATUTORY CITATION FOR BROAD PROHIBITION OF UNFAIR CONDUCT | NOTES |
|---|---|---|
| Alabama | Ala. Code § 8-19-1, *et seq.* | |
| Arizona | Ariz. Rev. Stat. § 44-1522 | |
| California | Bus. & Prof. Code § 17200 | |
| Connecticut | Conn. Gen. Stat. § 42-110b | |
| Delaware | Del. Code Ann. tit. 6, § 2512 | |
| District of Columbia | D.C. Code §§ 28-3901, 3904 | |
| Florida | Fla. Stat. § 501.204 | |
| Georgia | Ga. Code. Ann. § 10-1-393 | |
| Hawaii | Haw. Rev. Stat. § 480-2 | |
| Illinois | 815 Ill. Comp. Stat. Ann. 505/2 | |
| Indiana | Ind. Code Ann. § 24-5-0.5-3 | Relevant section for consideration of Defendant's conduct as unlawful (in addition to those cited under other claims):<br><br>IND. CODE § 7.1-7-5-1.1(i) (restriction on marketing as a modified risk product). |
| Iowa | Iowa Code § 714H.3 | |
| Kentucky | Ky. Rev. Stat. § 367.170 | |

| | | |
|---|---|---|
| Louisiana | La. Rev. Stat. § 51:405(a) | |
| Maine | Me. Rev. Stat. Ann. tit. 5 § 207 | |
| Massachusetts | Mass. Gen. Laws. ch. 93A § 2 | Relevant section for consideration of Defendant's conduct as unfair and unlawful (in addition to those cited under other claims):<br><br>940 Mass. Code Regs. 21.04(1)(c); (1)(D).<br><br>940 Mass. Code Regs. 21.04(2)(a); (2)(b). 940 Mass. Code Regs. 21.04(3) |
| Michigan | Mich. Comp. Laws Serv. § 445.903 | |
| Mississippi | Miss. Code Ann. § 75-24-5 | |
| Missouri | Mo. Rev. Stat. § 407.020 | |
| Montana | Mont. Code Ann. § 30-14-103 | |
| Nebraska | Neb. Rev. Stat. § 59-1602 | |
| New Hampshire | N.H. Rev. Stat. Ann. § 358-A:2 | |
| New Mexico | N.M. Stat. Ann. § 57-12-3 | |
| North Carolina | N.C. Gen. Stat. § 75-1.1 | |
| Oklahoma | Okla. Stat. tit. 15, § 753<br>Okla. Stat. tit. 15, § 752 (14) | |
| Oregon | Or. Rev. Stat. § 646.608 | |
| Pennsylvania | 73 P.S. § 201-2 | |
| Rhode Island | R.I. Gen. Laws § 6-13.1-2<br><br>R.I. Gen. Laws § 6-13.1-1(6) | |
| South Carolina | S.C. Code Ann. § 39-5-20(a) | |

| | | |
|---|---|---|
| Vermont | Vt. Stat. Ann. tit. 9, § 2453 | |
| Washington | Wash. Rev. Code § 19.86.020 | |
| West Virginia | W. Va. Code § 46A-6-104 | |
| Wyoming | Wyo. Stat. Ann. § 40-12-101, *et seq.* | |