**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| DANIEL METAGUE, on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>     v.<br><br>WOODBOLT DISTRIBUTION, LLC, d/b/a NUTRABOLT,<br><br>               Defendant. | Civil Action No. 8:20-cv-02186-PX |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, STAY PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARDS ....................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.     The FDA is the Proper Authority to Address the Issues in Plaintiff's Amended
Complaint.............................................................................................................. 4

       A.    The Court Should Dismiss Plaintiff's Amended Complaint Because the
Dispositive Issue Falls Within the FDA's Primary Jurisdiction ............................ 6

       B.    Plaintiff's Claims Are Expressly Preempted by the FDCA's Nutrient
Labeling Provisions and the Bar Against Private Enforcement............................ 11

       C.    The Court Should Dismiss or Stay This Case Pending the FDA's Decision
on the Amended Complaint's Core Contention.................................................... 16

II.    Plaintiff's Amended Complaint Fails Under Rule 12(b)(6) ............................................ 19

       A.    Fourth Circuit Precedent Mandates Dismissal of Plaintiff's Claims .................... 20

       B.    Plaintiff's Breach of Implied Warranty and Breach of Express Warranty
Claims Fail for Lack of Compliance with the Uniform Commercial Code.......... 23

       C.    Plaintiff's Breach of Express Warranty Claim Fails for Lack of Privity............. 24

       D.    Plaintiff Fails to Plead His Claims Based in Fraud With Particularity................. 26

       E.    Plaintiff's Amended Complaint Fails to Adequately Plead Reliance .................. 28

       F.    Plaintiff's Non-Maryland Based State Statue Count Must Fail; Plaintiff
Lacks Standing..................................................................................................... 30

       G.    Plaintiff's Amended Complaint Fails to Adequately Plead Injury ...................... 31

       H.    Plaintiff Does Not Have Standing to Request Injunctive Relief.......................... 33

CONCLUSION.................................................................................................................. 34

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)................................................................................. 3, 20, 22

*Ayres v. Ocwen Loan Servicing, LLC,*
   129 F. Supp. 3d 249 (D. Md. 2015) ................................................................ 4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................... 4, 20, 22

*Buckman Co. v. Plaintiff's Legal Comm.,*
   531 U.S. 341 (2001) ................................................................................ 11

*Burke v. Weight Watchers Int'l, Inc.,*
   983 F. Supp. 2d 478 (D. N.J. 2013) .......................................................... 15

*Nemphos ex rel. C.G.N. v. Nestle USA, Inc.,*
   No. GLR-12-2718, 2013 WL 4501308 (D. Md. Aug. 21, 2013), *aff'd sub
   nom.*, 775 F.3d 616 (4th Cir. 2015).................................................. 3, 13, 14

*Cox v. Shalala,*
   112 F.3d 151 (4th Cir. 1997) ......................................................................... 3

*Diodato v. Mentor Worldwide LLC.,*
   No. CV JKB-20-762, 2020 WL 3402296 (D. Md. June 19, 2020)........................ 17

*Glass v. Glob. Widget, LLC,*
   No. 219CV01906MCEKJN, 2020 WL 3174688 (E.D. Cal. June 15, 2020) .......... 19

*In re GNC Corp.,*
   789 F.3d 505 (4th Cir. 2015) ............................................... 20, 21, 22, 23

*In re GNC Corp.,*
   No. 14-2491, 2014 WL 2812239 (D. Md. June 20, 2014)............................. 21, 22

*Greenfield v. Yucatan Foods, L.P.,*
   18 F. Supp. 3d 1371 (S.D. Fla. 2014) ........................................... 7, 8, 16, 18

*Greifenstein v. The Estee Lauder Corp., Inc.,*
   No. 12-09235, 2013 WL 3874073 (N.D. Ill. July 26, 2014) ............................ 22

*McCormick v. Medtronic, Inc.*,
    219 Md. App. 485 (2014) ........................................................................................... 11

*Medtronic v. Lohr*,
    518 U.S. 470 (1996) .................................................................................................... 11

*Mylan Labs., Inc. v. Matkari*,
    7 F. 3d 1130 (1993) ............................................................................................... 12, 13

*U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ....................................................................................... 4

*National Ethical Pharmaceutical Ass'n v. Weinberger*,
    503 F.2d 1051 (4th Cir. 1974) (*per curiam*) ............................................................. 7

*Nemphos v. Nestle Waters N. Am., Inc.*,
    775 F.3d 616 (4th Cir. 2015) ................................................................................ 13, 14

*Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*,
    740 F.2d 21 (D.C. Cir. 1984) ..................................................................................... 19

*Reiter v. Cooper*,
    507 U.S. 258 (1993) ...................................................................................................... 7

*Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*,
    375 U.S. 96 (1963) ...................................................................................................... 11

*Salazar v. Honest Tea, Inc.*,
    74 F. Supp. 3d 1304 (E.D. Cal. 2014) ....................................................................... 15

*Snyder v. Green Roads of Fla. LLC*,
    430 F. Supp. 3d 1297 (S.D. Fla. 2020) ...................................................................... 19

*Stevens v. Boston Sci. Corp.*,
    152 F. Supp. 3d 527 (S.D. W.Va. 2016) .................................................................... 18

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir. 2002) ....................................................................................... 8

*Van Buren v. Walmart, Inc.*,
    No. CV DKC 19-0911, 2020 WL 1064823 (D. Md. Mar. 5, 2020) ............................ 4

*Vital v. One World Co., LLC.*,
    No. SACV 12-00314-CJC(MLGx), 2012 U.S. Dist. LEXIS (C.D. Cal. Nov.
    30, 2012) .................................................................................................................... 15

*Weinberger v. Bentex Pharmaceuticals, Inc.*,
    412 U.S. 645 (1973) ...................................................................................................... 7

*Weinberger v. Hynson, Westcott & Dunning*,
  412 U.S. 609 (1973) .................................................................................................. 7

**Statutes**

21 U.S.C. § 321 .................................................................................................... 8, 9

21 U.S.C. § 337 ........................................................................................................ 11

21 U.S.C. § 343 ...................................................................................... 9, 11, 12, 14

21 U.S.C. § 343-1 .............................................................................................. 11, 14

**Other Authorities**

21 C.F.R. § 101.9 ................................................................................... 9, 10, 14, 15

21 C.F.R. § 101.36 .............................................................................................. 9, 14

81 Fed. Reg. 33,741 (May 27, 2016) .................................................................... 16

## INTRODUCTION

In response to the motion to dismiss his original Complaint filed by Defendant Woodbolt Distribution, LLC, d/b/a Nutrabolt ("Woodbolt"), Plaintiff Daniel Metague filed his Amended Complaint, again, purportedly on behalf of himself, a national class and a Maryland-based sub-class. At its core (and the Amended Complaint does not contain much more than a thin core), Plaintiff alleges that a tiny portion of various XTEND Energy pre-workout nutritional powders manufactured and sold by Woodbolt are falsely labelled. Plaintiff specifically (and solely) takes issue with two tiny words that can be found on the bottom-left-hand corner of the front side of the label of some XTEND Energy products. Those two words are "0 calories."



Plaintiff claims that those words—"0 calories"—are false. The bulk of Plaintiff's Amended Complaint contains a host of repeated assertions and allegations, exclaiming that he and others like him were wronged by purchasing and consuming a product that increased their bodily caloric intake. Plaintiff's sole proof allegedly consists of "[i]ndependent bomb calorimetry testing" that "revealed that XTEND ENERGY [sic] contained approximately 366 calories per 100 grams." Amended Complaint, ¶ 5. Plaintiff goes on to claim that, "[a]ssuming a

serving size of 11.6 grams, each serving contains approximately 42 calories, significantly more than the '0' calories as advertised." *Id.* Because the product, before it is ingested, purportedly contains a *de minimis* amount of calories, Plaintiff concludes that he and others like him "have been, and continue to be, misled into purchasing Woodbolt's nutritional powders with the belief that they do not contain any calories." *Id.*

Notwithstanding Plaintiff's attempts to rehabilitate his action through this Amended Complaint, his claims are still preempted. In fact, the Amended Complaint now makes that abundantly clear. The U.S. Food and Drug Administration ("FDA") regulates dietary supplements such as XTEND Energy. The relevant FDA regulations do not conclusively determine whether caloric content labeling is required for dietary supplements containing only amino acids, such as the XTEND Energy products. As a result of a Citizen Petition filed with FDA in October 2020, this exact issue is currently pending before the FDA for a determination by that agency. In fact, the labels on the relevant XTEND Energy products are accurate pursuant to the relevant regulations. If and when the FDA conclusively determines that the at-issue labels need not provide caloric content, Plaintiff's case will become moot. The primary jurisdiction doctrine directs that this case be dismissed, or at the very least stayed, to allow the FDA sufficient time to make an initial determination.

In any event, Plaintiff's conclusion is mistaken. He has again failed to meet the pleading requirements in this Circuit. Even if the issues in Plaintiff's Amended Complaint were not preempted, and even if XTEND Energy did contain a negligible amount of calories, Plaintiff's Amended Complaint does not plausibly allege that he (or anyone else) was damaged. Plaintiff's

Amended Complaint fails to explain how he (or anyone else) suffered any harm through the purchase or consumption of any of the relevant XTEND Energy products.[1]

The allegations in Plaintiff's Amended Complaint do not plausibly state a claim upon which relief can be granted because they lack adequate factual support. Plaintiff's Maryland Consumer Protection Act ("MCPA") claims fail because, even if the challenged claim were inaccurate (it is not), Plaintiff has suffered no cognizable injury. Finally, despite the fact that Plaintiff's claims sound in fraud, Plaintiff fails to plead them with the particularity required by Rule 9(b). Accordingly, the Court should dismiss Plaintiff's Amended Complaint in its entirety. At a minimum, the Court should stay this action pending the FDA's determination of the Citizen Petition.

## LEGAL STANDARDS

Pursuant to the Constitution's Supremacy Clause, state laws that conflict with federal law are preempted. *Cox v. Shalala*, 112 F.3d 151, 154 (4th Cir. 1997) (citation omitted). Where a state statute or cause of action would impose a requirement that is not the same as the federal requirement, it is preempted. *Nemphos ex rel. C.G.N. v. Nestle USA, Inc.*, No. GLR-12-2718, 2013 WL 4501308, at *4 (D. Md. Aug. 21, 2013), *aff'd sub nom.*, 775 F.3d 616 (4th Cir. 2015). Plaintiff's Complaint alleges just such a requirement.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quotations and citations omitted). In other words,

---

[1] Additionally, Plaintiff only pleads that he (and others) relied on the "0 calorie" claim to purchase the product in the final paragraph of the final Count of his Amended Complaint. *See* Amended Complaint, *passim*; *see also id.*, ¶ 106. Even after having taken the opportunity to amend his Complaint, Plaintiff *still* fails to plead reliance as to Counts I through VI.

the complaint's "actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Where, as here, the claims asserted sound in fraud, they must also satisfy Rule 9(b)'s heightened pleading standard, requiring that they be plead with particularity. *See Van Buren v. Walmart, Inc.,* No. CV DKC 19-0911, 2020 WL 1064823, at *2 (D. Md. Mar. 5, 2020) ("Fraud allegations that fail to comply with Fed.R.Civ.P. 9(b) warrant dismissal under Fed.R.Civ.P. 12(b)(6) review"); *Ayres v. Ocwen Loan Servicing, LLC,* 129 F. Supp. 3d 249, 273 (D. Md. 2015) ("[A]llegation fail[ed] to satisfy Rule 9(b)'s pleading requirements . . . [t]herefore, the Plaintiffs [were] not . . . able to recover damages based on [alleged] violation."). Rule 9(b) requires a plaintiff to plead "at a minimum, . . .the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc*., 707 F.3d 451, 455–56 (4th Cir. 2013) (citations omitted).

## ARGUMENT

I.    **The FDA is the Proper Authority to Address the Issues in Plaintiff's Amended Complaint**

Plaintiff's Amended Complaint asserts liability solely based on labeling stating that the relevant product—"nutritional powders containing branched-chain amino acids labeled 'XTEND Energy'"—contains zero calories. Amended Complaint, ¶ 2. As explained further below, however, the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §301, *et seq.*, provides the FDA with the sole authority to regulate calculation of calories in foods and dietary supplements. The FDA has promulgated extensive regulations on different methods that can be used as alternatives in the calculation of calories in these products.

The FDA's regulations seek to impose a nationwide standard by which manufacturers and consumers alike benefit from uniform, predictable methods for labelling dietary supplements. Plaintiff's Amended Complaint baldly asserts that his claims seek only to impose those standards contained in FDA's nutrition labelling regulations, stating "Plaintiff does not seek to impose requirements greater than those required by FDA regulations. Plaintiff's claims do not seek to expand upon, or call for stricter standards than, the labeling or marketing requirements of caloric content established by FDA regulations." Amended Complaint, ¶ 10.

Plaintiff's Amended Complaint thereby expressly deprives this Court of jurisdiction. The FDCA does not create a private right of action to enforce the statute and regulations promulgated pursuant to that statute. Based on the new admission in the Amended Complaint, this action must be dismissed for lack of jurisdiction.

However, the Amended Complaint also claims that one of FDA's methods for calculating calories does not apply to Woodbolt's products. *See* Amended Complaint, ¶ 4 (claiming that calorie determination by "Atwater factors" is inapplicable). Plaintiff's Amended Complaint is therefore self-contradictory, seeking to impose a different (and higher) standard than one that the FDA deems applicable to dietary supplements. The FDA has primary and exclusive jurisdiction to determine, in accordance with the FDCA and properly promulgated regulations, the requirements for labeling of dietary supplements distributed in the United States. Plaintiff's claims, which are expressly premised on the ***inapplicability*** of one of the alternative methods authorized by FDA for computing calories, must also fail. In either event, the Amended Complaint must be dismissed.

Courts have repeatedly refused to entertain complaints like the one filed in this Court, recognizing that the FDA has primary jurisdiction to analyze and sanction claimed violations of

FDCA dietary supplement labeling provisions. The FDCA also provides that the FDA is responsible for enforcing the provisions of the FDCA, and that the FDA's designation as the appropriate agency to assess labeling claims and sanction improper claims preempts state law causes of action, such as the ones asserted by Plaintiff. Finally, to the extent that Plaintiff's claims seek nothing more than what the FDCA and the nutrition labeling regulations already require, Plaintiff's claims may be rendered moot by a Citizen Petition currently pending with the FDA, and the case should at the very least be stayed.

### A. The Court Should Dismiss Plaintiff's Amended Complaint Because the Dispositive Issue Falls Within the FDA's Primary Jurisdiction

The primary jurisdiction doctrine applies where a plaintiff's claims implicate a federal agency's expertise with a regulated product. Under this doctrine, although a claim is "originally cognizable" in the courts, referral of the matter to a federal administrative agency is appropriate where "enforcement of the claim requires resolution of the issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." United States v. W. Pac. R.R. Co., 352 U.S. 59, 63 (1956). "No fixed formula exists" to guide a court's choice to apply the doctrine. Id. at 64. Determining whether the doctrine applies requires the Court to weigh factors that guide "whether the reasons for the doctrine are present and whether the purposes it serves will be aided by its application." Id.

One factor used by courts to determine whether to apply the primary jurisdiction doctrine is whether uniform enforcement of a statute is important. *See id.* (citing *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426 (1907)). Second, a court should consider the expertise and specialized knowledge possessed by an administrative agency. *See id.* (citing *Far East Conference v. United States*, 342 U.S. 570 (1952)). Upon weighing these factors and deciding that primary jurisdiction should lie with the administrative agency, a court may refer the matter

to the agency by either staying the proceeding or dismissing the action without prejudice, allowing the parties opportunity to seek an administrative ruling. *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).

The primary jurisdiction doctrine applies to questions assigned by Congress to be "within the peculiar expertise" of FDA. *See Weinberger v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 653-54 (1973) (upholding a district court decision to refer to the FDA questions about a drug's status under the 1962 Kefauver Harris Amendments to the FDCA, known then as the "1962 amendments"). Pleadings, like the one before this Court, make clear that the FDCA preempts state law claims, for good reason.

On two appeals arising out of the Fourth Circuit, the Supreme Court decided that complex scientific questions covered by the FDCA are "peculiarly suited to initial determination by the FDA." *Id.* at 653; *Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 627 (1973) ("The heart of the new procedures designed by Congress is the grant of primary jurisdiction to FDA, the expert agency it created."). Subsequently, the Fourth Circuit summarily upheld a dismissal based upon a finding that primary jurisdiction lies with the Food and Drug Administration. *National Ethical Pharmaceutical Ass'n v. Weinberger*, 503 F.2d 1051, 1052 (4th Cir. 1974) (*per curiam*) (affirming the district court decision to dismiss under the primary jurisdiction doctrine because the issue was a question of drug classification covered by the FDCA).

The primary jurisdiction principle has resulted in dismissal of complaints relating—as does the Amended Complaint in this matter—to allegations of improper or unlawful food labeling. For example, in *Greenfield v. Yucatan Foods, L.P.*, 18 F. Supp. 3d 1371 (S.D. Fla. 2014), the parties litigated whether products could list "evaporated cane juice" as an ingredient,

rather than listing sugar. *Greenfield* held that the controlling issue was one of food labeling, which is regulated under the FDCA, as amended by the National Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343 *et seq. Id.* at 1373, 1375-76 (highlighting similar cases from several jurisdictions). The plaintiff in *Greenfield* brought claims for deceptive and unfair practices under the Florida Deceptive and Unfair Trade Practices Act as well as unjust enrichment on a mislabeling theory for using the words "evaporated cane juice" on the defendant's products. *Id.* at 1373.

The *Greenfield* court applied four factors, used in many courts, to assist in determining whether to apply the doctrine of primary jurisdiction: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Id.* at 1376; *also Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). In its analysis, the court also noted the importance of and relied heavily on a fifth factor: "whether the FDA has shown any interest in the issues presented by the litigants." *Greenfield*, 18 F. Supp. 3d at 1376. The claim filed by Plaintiff in this case meets all five of those factors.

Specifically, first, each of Plaintiff's claims rest upon the supposition that Woodbolt mislabeled the product as containing zero calories but did not account for the caloric value of amino acids contained in the product. *See* Amended Complaint, ¶¶ 49, 51, 56, 58, 63-65, 67-68, 71-72, 80-81, 85-86, 94-95, 100-101. However, Woodbolt's products are dietary supplements subject to regulation under the FDCA as amended by the Dietary Supplement Health and Education Act of 1994 ("DSHEA"). *See* 21 U.S.C. § 321(ff) (defining dietary supplement as products intended to supplement the diet and containing amino acids). DSHEA subjected dietary

supplements to the misbranding provisions of the FDCA. 21 U.S.C. § 343(s). Moreover, dietary supplements are subject to the same scheme of nutrition labeling enacted for all other foods under the NLEA, *see* 21 U.S.C. § 321(ff) ("a dietary supplement shall be deemed to be a food within the meaning of this Act"), which provides for the enactment of regulations to govern nationwide standardized labeling requirements, 21 U.S.C. § 343(q).

To this end, the FDA has promulgated regulations governing nutrition labeling for food, 21 C.F.R. § 101.9, and dietary supplements, 21 C.F.R. § 101.36. Reading these regulations together delineates the required contents for dietary supplement labels and the allowable means for determining those contents. Under § 101.9, a food product's label must contain information regarding the product's level of nutrients, including total calories and protein. 21 C.F.R. § 101.9(c). This regulatory provision goes on to provide that "caloric content *may* be calculated" by one of six methods. 21 C.F.R. § 101.9(c)(1)(i) (emphasis added). Five of these methods allow calories to be calculated by applying food factors (*i.e.* the number of calories per gram of a nutrient such as protein) to "the actual amount . . . of food components (e.g., fat, carbohydrate, protein, or ingredients with specific food factors) present per serving" of the product. *Id.* In effect, a product manufacturer is given discretion to calculate the caloric content by any of the methods contained in 21 C.F.R. § 101.9(c)(1)(i).

To determine how the calorie calculation requirements are applied to dietary supplements, one must next turn to 21 C.F.R. § 101.36. This section states that dietary supplements shall contain information regarding ingredients that have Reference Daily Intake or Daily Reference Values as established in 21 C.F.R. § 101.9(c), such as those for total calories and protein. 21 C.F.R. § 101.36(b)(2). However, 21 C.F.R. §101.9(c) is silent as to an established reference value for amino acids. More importantly, 21 C.F.R. § 101.36(b)(2) specifically states

that dietary supplement labels *may not* declare protein content when the product contains only individual amino acids. This is important because only amino acids are present in Woodbolt's XTEND Energy products. Therefore, when a dietary supplement such as XTEND Energy contains only amino acids, it *cannot* declare that it contains any protein and similarly need not declare calories per the methods contained in 21 C.F.R. § 101.9(c).

The declaration of caloric content for dietary supplements that contain only amino acids is the primary issue underpinning Plaintiff's claims. While Plaintiff alleges that his claims do not seek to impose different requirements than those contained in the nutrition labelling regulations, Amended Complaint, ¶ 10, what Plaintiff *actually* seeks is to hold Woodbolt to a standard not required by the FDA. The Amended Complaint attempts to supplant FDA's determination as to what methods are appropriate for calorie calculation when it claims that one (Atwater factors) is inapplicable to dietary supplements that contain only amino acids. Amended Complaint, ¶ 4. Confusingly, Plaintiff later claims that he seeks only to impose those standards enacted by FDA, in effect reinstating the Atwater factors method. Amended Complaint, ¶ 10.

At best, this issue of how to calculate calories and label dietary supplements containing only amino acids is one of arguable ambiguity. Significantly, this issue is currently before FDA in a pending Citizen Petition, discussed in more detail below. *See infra* Section I.C. Resolving an ambiguity of this kind falls squarely within the primary jurisdiction of the FDA. More likely, Plaintiff's attempt to usurp FDA enforcement authority makes Plaintiff's Amended Complaint fully meritless.[2]

---

[2] As explained in section II, *infra*, Plaintiff's Amended Complaint is in any case meritless.

**B.   Plaintiff's Claims Are Expressly Preempted by the FDCA's Nutrient Labeling Provisions and the Bar Against Private Enforcement**

When analyzing preemption claims, "[t]he purpose of Congress is the ultimate touchstone." *Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 375 U.S. 96, 103 (1963). When preemption arguments are based on express preemption provisions, Congress's purpose should be discerned from the language of the relevant statute, the surrounding statutory framework, and the structure and purpose of the statute. *Medtronic v. Lohr*, 518 U.S. 470, 485-86 (1996). In the context of the FDCA, this means that, although not all state law claims are barred, those that "exert an extraneous pull on the scheme established by Congress" will be preempted. *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341, 353 (2001).

In the context of dietary supplement labeling, Congress expressly intended to bar private enforcement through state law causes of action. First, the FDCA requires that "proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States." 21 U.S.C. § 337(a). Second, federal legislation governing nutrient labeling for food (NLEA) and dietary supplements (DSHEA) *expressly* preempts state labeling laws that conflict with the FDCA. 21 U.S.C. § 343-1(a). In relevant part, 21 U.S.C. sections 343-1(a) and (a)(4) together read, "no State . . . may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—any requirement for the labeling of food [broadly defined to include dietary supplements] that is *not identical* to the requirement of section 403(q)" (emphasis added). *See also McCormick v. Medtronic, Inc.*, 219 Md. App. 485, 518 (2014) ("claims are preempted insofar as they attack the accuracy or adequacy of the statements [] made in the FDA-mandated and FDA-approved labeling.").

Dietary supplements were brought under the ambit of the national labeling scheme established by the NLEA when the DSHEA added subparagraph (5)(F) to section 403(q). 21

U.S.C. § 343(q)(5)(F) (2018). Section 403(q)(5)(F), codified at 21 U.S.C. § 343(q)(5)(F), states that "dietary supplement product[s] . . . shall comply with the requirements of [the nutrition labelling provisions of § 343(q)(1) and (2)] in a manner which is appropriate for the product and which is specified in regulations of the Secretary."

Subparagraphs (1)(C) and (1)(D) of the nutrition labelling provisions, in turn, require labels to declare "the total number of calories—derived from any source" as well as certain nutrients like "total protein." 21 U.S.C. §§ 343(q)(1)(C)-(D). However, subparagraph (2)(B) states that based upon determinations that "information relating to a nutrient required by subparagraph (1)(C) [and] (1)(D) . . . is not necessary to assist consumers in maintaining healthy dietary practices, the Secretary may by regulation remove information relating to such nutrient from such requirement." 21 U.S.C. § 343(q)(2)(B). These nutrition labelling provisions present three notable dimensions critical to resolving Plaintiff's claims: (1) the NLEA requires FDA to promulgate regulations governing nutrition labeling, but (2) simultaneously provide the Agency significant discretion as to their specifics, while (3) expressly preempting state law claims that would impose different standards than those set forth by FDA.

This Circuit has used both the private enforcement ban and the NLEA express preemption provisions to dismiss claims similar to those presented by Plaintiff here. In *Mylan Labs., Inc. v. Matkari*, 7 F. 3d 1130 (1993), the Fourth Circuit dismissed the plaintiff's false advertising claims, brought under the Lanham Act (15 U.S.C §§ 1117 and 1125(a)), finding that the claim was in essence an attempt to avoid the FDCA's section 307 private enforcement ban. *See id.* at 1139 (dismissing the portion of the false advertising claim based on allegations that defendants misrepresented their drug's status by placing them on the market). In contrast, other courts have held that the section 307 private enforcement ban does not apply where the

plaintiff's claims are predicated upon state law *and* seek only to enforce standards identical to those under the FDCA as amended by the NLEA. *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1095-96 (2008), *cert. denied sub nom. Albertson's, Inc. v. Kanter*, 555 U.S. 197 (2009). More recently, *POM Wonderful LLC v. Coca-Cola Co.* clarified that complementary federal law causes of action, such as Lanham Act mislabeling claims, are *not* precluded by the FDCA, whereas NLEA express preemption provisions directed at state laws remain viable bars to state law causes of action. 573 U.S. 102, 114-16 (2014). Therefore, should this Court find these cases as reason to distinguish *Mylan*, it is the Fourth Circuit's post-*POM Wonderful* decision in *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616 (4th Cir. 2015), that is most relevant to understanding the preclusive effect of the FDCA to Plaintiff's claims.

In *Nemphos*, the Fourth Circuit affirmed the district court's dismissal of state law claims based on extensive analysis of the NLEA and its express preemption provisions. 775 F.3d at 626-27. Nemphos brought claims, in relevant part, for breach of implied warranties, fraud, and unfair and deceptive trade practices under the Maryland Consumer Protection Act alleging failure-to-warn and misleading-marketing theories regarding the fluoride content of the defendant's bottled water and baby formula. *Id.* at 618-19. The *Nemphos* court looked to the structure of the FDCA and Congressional intent of the amendments contained in the NLEA, *id.* at 619, the uniform structure of the national labeling scheme, *id.* at 620, and the contours of the preemption provisions, *id.* at 620-21, to ultimately conclude that the requirements set forth by the FDA pursuant to the FDCA and NLEA prevail over conflicting state laws, *id.* at 623. The court then determined that the plaintiff's claims failed because they would require the defendants to adhere to a different product standard of identity under state law than that required by the FDA. *Id.* at 624-26.

Plaintiff's claims in this case are similarly preempted by the FDCA. Plaintiff asserts state law claims akin to those in *Nemphos*, based on a theory that Woodbolt's dietary supplement is deceptively labeled due to the caloric contents listed in its label. Amended Complaint, ¶¶ 20-24. However, the labeling of dietary supplements and the reporting of caloric contents are regulated by the FDA pursuant to its authority under the FDCA. 21 U.S.C. § 343(q). As described above, DSHEA incorporated the new dietary supplement requirements into the nutrition labeling scheme already set forth in the FDCA as amended by the NLEA.

The standards of identity at issue in *Nemphos* and the nutrition labeling requirements implicated by Plaintiff are both covered by the NLEA express preemption provisions. 21 U.S.C. § 343-1(a)(1) and (a)(4); *see Nemphos*, 775 F.3d at 620-21, 626-27 (interpreting and applying the preemption provisions of 21 U.S.C. §343-1(a)). Therefore, federal dietary supplement labeling provisions would "preempt any pertinent state requirement that is not identical to the federal requirement." *Id.*

Plaintiff's claims would require Woodbolt's products to bear labels that at the very least ***potentially*** conflict with federal nutrition labeling requirements. Under the NLEA labeling scheme analyzed in *Nemphos*, dietary supplement labels shall declare nutrient content amounts such as total calories and protein. 21 C.F.R. § 101.36. As explained above, however, the regulatory provisions provide several methods for determining the caloric content of foods and dietary supplements. 21 C.F.R. § 101.9(c). The allowable methods include several options whereby calories are calculated by applying food factors to the amount of protein, carbohydrates, and fat present in a serving of the product. *Id.* Further, these regulations prohibit dietary supplements from declaring protein on their labels when only individual amino acids are present. 21 C.F.R. § 101.36. Whether this ambiguity in the nutrition labeling scheme was an intentional

policy decision of the FDA or an error demanding revisions, if Plaintiff is successful in his claims here, it would require changes to dietary supplement labels through state law consumer protection claims that would interfere with the uniform statutory scheme intended by Congress.

In this regard, courts around the country have held that class action complaints for deceptive nutrient labeling were preempted by the NLEA. These examples cover nearly identical violations to that alleged by Plaintiff (*e.g.*, breach of warranty, state consumer protection statutes, deceptive trade practices, unjust enrichment, *etc.*) for a variety of food labeling issues that implicate the standards used to calculate nutrient content. *See Burke v. Weight Watchers Int'l, Inc.*, 983 F. Supp. 2d 478 (D. N.J. 2013) (calorie calculation and labeling); *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304 (E.D. Cal. 2014) (antioxidant calculation and labeling); *Vital v. One World Co., LLC.*, No. SACV 12-00314-CJC(MLGx), 2012 U.S. Dist. LEXIS at *2-5 (C.D. Cal. Nov. 30, 2012) (potassium and electrolyte calculation). These cases demonstrate that, when a plaintiff attempts to impose a standard different from that required under federal law for how to calculate nutrient content, the FDCA preempts those non-identical state law claims. *See Burke* 983 F. Supp. 2d at 483 (failure to rely on methods identical to federal regulations for calculating calories); *Honest Tea* 74 F. Supp. at 1312-13 (failure to use identical methods for measuring antioxidants and sampling of the products identical to 21 C.F.R. § 101.9(g)).

In *Burke v. Weight Watchers, Inc.*, the plaintiff used independent lab testing to claim that the defendant's ice cream bars contained 20-36% more calories than was disclosed on the product labels. *Burke*, 983 F. Supp. at 480. However, the *Burke* court held that, because the FDCA and its implementing regulations allowed calories to be calculated by five different methods, a successful claim must demonstrate that the ice cream bar calorie content was mislabeled using all five methods. *Id.* at 482-83. Notably, the court reasoned that permitting

anything less in regard to calorie calculations would allow state law to impose labeling requirements that were not identical to the FDCA. *Id.*

Plaintiff's state law claims here are based entirely on the calculation of the caloric content of dietary supplements labeled by Woodbolt to comply with the FDCA. If these claims are successful, they would force Woodbolt to label its products in a manner not required by the uniform nutrition labeling scheme under federal law. These same NLEA provisions expressly preempt non-identical state laws. Plaintiff attempts to avoid the preclusive effect of these preemption provisions by claiming that he seeks nothing more than what the FDA regulations impose. Amended Complaint, ¶ 10. However, to claim that Woodbolt's products are mislabeled, the plaintiff must also claim that certain calorie calculation methods are inapplicable, thereby necessarily imposing a different standard than that required by federal law. Plaintiff's claims thereby exert an "extraneous pull" on the national regulatory scheme designed by Congress. Because his Amended Complaint is preempted by the FDCA, it should be dismissed.

### C. The Court Should Dismiss or Stay This Case Pending the FDA's Decision on the Amended Complaint's Core Contention

Similar to the issues presented in *Greenfield v. Yucatan Food, L.P.*, the FDA has taken an active interest in regulating dietary supplement labeling. In addition to promulgating extensive regulations on appropriate methods for supplement labeling, the FDA regularly revises and updates these regulations to address new developments in dietary science and human behavior. *See*, *e.g.*, Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,741 (May 27, 2016) (adding new requirements for declaring added sugars, updating daily reference values relevant to dietary supplements, removing the requirement for declaring calories from fat, amongst others). Not only has the FDA demonstrated a clear interest in regulating

dietary supplement labeling generally, the issue at the heart of Plaintiff's Amended Complaint is currently pending before the FDA.

On October 26, 2020, the Natural Products Association ("NPA"), an industry trade group, submitted a Citizen Petition to the FDA, requesting that the FDA clarify labeling requirements for calories that may be associated with amino acids in dietary supplements. *See* Natural Products Association, *Citizen Petition Requesting FDA Amend Nutrition Facts and Supplement Facts Labeling Regulations Pertaining to Caloric*, NPA National (Oct. 26, 2020), https://beta.regulations.gov/document/FDA-2020-P-2134-0001 (the "NPA Citizen Petition").[3]

The NPA Citizen Petition details the ambiguities and problems presented by the regulations as they are currently written, and the failures of past guidance issued by the FDA regarding nutrition labeling to resolve this issue. The NPA Citizen Petition asks that the FDA exercise its enforcement discretion to conclusively determine that labels that calculate calories in dietary supplements based on the fact that single amino acids in dietary supplements provide no nutritional value.

The NPA Citizen Petition explains that

> NPA and its member companies are seeking a commonsense approach to this issue in the near-term, in light of increasing private litigation on this topic. Although FDA did not address this issue when it recently updated its Nutrition and Supplement Facts labeling rules, agency action is needed urgently so that determinations about the appropriate declaration of calories associated with amino acid content are appropriately made by the regulatory body authorized by Congress to make such determinations, rather than by the courts.

NPA Citizen Petition, at 2.

---

[3]     The Court may take judicial notice of the NPA Citizen Petition, a publicly available document submitted to the FDA that can be found on a federal government website. *Diodato v. Mentor Worldwide LLC.*, No. CV JKB-20-762, 2020 WL 3402296, at *1 n.1 (D. Md. June 19, 2020) ("The Court takes judicial notice of the information contained in this document and the other publicly available FDA documents submitted as exhibits to [the] motion.") (Citing *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017)).

The NPA Citizen Petition was filed precisely because Plaintiff and others like him are exploiting a current ambiguity in FDA regulations, solely to argue that courts should impose potentially more stringent label requirements on products than nationally required under federal standards. Determination of those labelling requirements rests solely within the FDA's province based on Congresses' authority and is not appropriate to be determined here.

The FDA is currently evaluating the NPA Citizen Petition, and will likely respond to it within the coming months. Assuming, as Woodbolt believes most likely, the FDA grants the NPA Citizen Petition, and concludes that dietary supplements such as XTEND Energy need not provide calorie counts for the branched chain amino acids contained therein, Plaintiff's claims will be moot.

The FDA has been tasked with setting requirements for caloric labeling and will address the precise question raised by Plaintiff's Amended Complaint. Under these circumstances, dismissal of the Amended Complaint under the doctrine of primary jurisdiction is appropriate, to permit FDA, with its scientific and regulatory expertise in this area, to consider the issue.[4]

Alternatively, and at the very least, this Court should stay this case pending the FDA's grant or denial of the NPA Citizen Petition. Such a stay would both serve to conserve judicial resources and would protect this Court from potentially issuing a ruling that would conflict with

---

[4]     Courts have little hesitation applying the primary jurisdiction doctrine to claims that avoid explicit reference to federal legal provisions when a matter falls within the special competence of the FDA. *See, e.g.*, *Greenfield*, 18 F. Supp. 3d at 1373-74 (plaintiff's claims were based solely on state law causes of action); *Stevens v. Boston Sci. Corp.*, 152 F. Supp. 3d 527, 535-37 (S.D. W.Va. 2016) (dismissing plaintiff's argument that avoiding discussion of the FDCA should save them from the doctrine of primary jurisdiction). Therefore, this Court should dismiss the Plaintiff's claims because they rely on an issue that falls squarely within the primary jurisdiction of the FDA.

soon-to-be released FDA guidance. Granting a stay in this regard would thereby have the twin benefits of being both prudent and efficient.

"Generally, under FDCA, Congress has entrusted the Secretary of HHS, and her delegate FDA, with the authority to make such expert policy judgments in the first instance, and in most cases a court properly stays its hand until FDA has made an initial ruling." *Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin*., 740 F.2d 21, 28 (D.C. Cir. 1984). Courts around the country have done just that pending the FDA's guidance on other recent matters. *See, e.g.*, *Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297 (S.D. Fla. 2020) (staying false advertising action regarding "labelling in respect to the number of milligrams of hemp extract contained in a CBD product" pending possible FDA action, and noting that a stay was particularly appropriate because current "FDA regulations currently provide little guidance"). *See also Glass v. Glob. Widget, LLC*, No. 219CV01906MCEKJN, 2020 WL 3174688, at *4 (E.D. Cal. June 15, 2020) (court stayed false advertising CBD action "until such time as the FDA completes its rulemaking regarding the marketing, including labelling, of hemp-derived ingestible products.").

As of the date of this filing, the NPA Citizen Petition has been pending for just shy of four months. The FDA will likely grant or deny the motion in the coming months. At the very least, staying this action until the Agency definitively rules on an issue that goes to the heart of Plaintiff's Amended Complaint is appropriate here.

## II.     Plaintiff's Amended Complaint Fails Under Rule 12(b)(6)

Even if Plaintiff's Amended Complaint was not preempted (it is), it should still be dismissed. It fails to state a claim for which relief can be granted. In search of a legal remedy for his phantom injury, Plaintiff's Amended Complaint pleads seven causes of action for alleged

injury due to the words "0 calories." Those claims include: Breach of Implied Warranty (Count I), Breach of Express Warranty (Count II), Fraud (Count III),[5] Injunctive and Declaratory Relief (Count IV), Violation of the MCPA (Count V), Unjust Enrichment (Count VI), and, attempting to piggy-back on his MCPA count, the purported violation of a host of state statutes (Count VII). As explained below, each count fails as a matter of law.

Plaintiff's Amended Complaint has failed to allege, as this Circuit requires, that all experts in the relevant field agree that the challenged "0 calorie" claim is literally false. Plaintiff's Amended Complaint therefore does not comply with the mandate the Fourth Circuit set forth six years ago in *In re GNC Corp.*, 789 F.3d 505 (4th Cir. 2015), and should be dismissed on that basis. Plaintiff has also failed to allege with sufficient detail that he—or any other person—relied on the "0 calorie" label in purportedly purchasing the XTEND Energy product. Moreover, Plaintiff has failed to adequately allege what, if any, injury he (or any other person) has suffered through consuming a pre-workout energy drink containing (as Plaintiff asserts, and as is taken as true for the purposes of this Motion to Dismiss) a miniscule number of calories. As such, Plaintiff's Amended Complaint fails the Supreme Court's plausibility tests as articulated in *Iqbal* and *Twombly*. Because Plaintiff's Amended Complaint fails to state a proper claim, it should be dismissed in full.

### A.    Fourth Circuit Precedent Mandates Dismissal of Plaintiff's Claims

Each of Plaintiff's claims is based on allegations that Woodbolt made false claims regarding the product's caloric intake on the front of the product's label among other places. Per this Circuit's precedent, these claims must fail. In *In re GNC Corp.*, a published opinion issued

---

[5]    Plaintiff's Amended Complaint has neglected to name his Third Cause of Action. Defendant assumes this is an error, as the parallel count in Plaintiff's original Complaint was for "fraud."

in 2015, the Fourth Circuit held that a plaintiff cannot prevail on a claim based on allegations that a marketing statement is false unless the plaintiff alleges that *all* reasonable experts in the relevant scientific field agree that the representation is false. On this point, the *In re GNC* Court was clear, explaining,

> in order to state a false advertising claim on a theory that representations have been proven to be false, **plaintiffs must allege that all reasonable experts in the field agree that the representations are false**. If plaintiffs cannot do so because the scientific evidence is equivocal, they have failed to plead that the representations based on this disputed scientific evidence are false.

789 F.3d 505, 516 (4th Cir. 2015) (emphasis added). Plaintiff's Amended Complaint contains no such allegation.

The plaintiffs in *GNC Corp.* alleged that the advertisements and marketing relating to the defendants' dietary supplements were false and "incapable of providing the advertised joint health benefits." *Id.* at 510. The plaintiffs there brought claims in Maryland federal court under various states' consumer protection laws, including the MCPA, as well as for breach of express warranty. *In re GNC Corp.*, No. 14-2491, 2014 WL 2812239, at *1 (D. Md. June 20, 2014). Judge Motz held that "[i]f there are experts who support what defendants say in their advertisements, the advertisements are not false and misleading, an unfair trade practice, or otherwise violative of the consumer protection statutes, unless the clinical trial relied upon by defendants was itself false and/or deceptive." *Id.* at *12.

The Fourth Circuit affirmed, holding "that in order to state a false advertising claim on a theory that representations have been proven to be false, plaintiffs must allege that all reasonable experts in the field agree that the representations are false. If plaintiffs cannot do so because the scientific evidence is equivocal, they have failed to plead that the representations based on this disputed scientific evidence are false." *In re GNC*, 789 F.3d at 516. Likewise, "[w]hen litigants

concede that some reasonable and duly qualified scientific experts agree with a scientific proposition, they cannot also argue that the proposition is 'literally false.'" *Id.* at 515. *See also Greifenstein v. The Estee Lauder Corp., Inc.*, No. 12-09235, 2013 WL 3874073, at *4-5 (N.D. Ill. July 26, 2014) (dismissing a false advertising claim where the complaint acknowledged the existence of studies supporting the challenged marketing claim).

Per this Circuit's precedent, Plaintiff's claims must be dismissed. Plaintiff's Amended Complaint fails to plausibly plead that all experts in the relevant field agree with Plaintiffs' assessment that Woodbolt's advertising is false.

In fact, the Amended Complaint fails to allege that all reasonable experts agree that the representations by Woodbolt regarding the caloric intake of XTEND Energy are false. In order to adequately plead his false advertising claims so as to satisfy *Twombly* and *Iqbal* and *In re GNC*, Plaintiff must allege facts sufficient to plausibly plead that *all* reasonable experts in the relevant field support their claim that consuming XTEND Energy causes consumers to gain calories. *In re GNC Corp.*, 2014 WL 2812239. Plaintiff has completely failed to meet that pleading requirement.

Plaintiff fails to plead any *facts* to lend plausibility to his claims. Even after amending his Complaint, Plaintiff still fails to plead that *all* reasonable experts in the field agree with their allegations. Indeed, the only support for Plaintiff's allegation is a citation-free reference to "independent laboratory testing" purportedly which "revealed that [XTEND Energy] contained approximately 366 calories per 100 grams." Amended Complaint, ¶ 21.

Plaintiff fails to allege who performed that testing, or found it reliable. In any event, the "independent laboratory testing" says nothing about what happens to those calories once they are consumed. Plaintiff's Amended Complaint conspicuously cites no experts for the proposition

that calories from XTEND Energy absorb into the human body post-digestion. Plaintiff's Amended Complaint does not abide by the Fourth Circuit's explicit holding in *In re GNC*, and should be dismissed.

> **B.** **Plaintiff's Breach of Implied Warranty and Breach of Express Warranty Claims Fail for Lack of Compliance with the Uniform Commercial Code**

Plaintiff is a resident and citizen of Montgomery County, Maryland. Amended Complaint, ¶ 11. Plaintiff alleges that "Plaintiff purchased and used the Product [XTEND Energy] in Maryland." *Id.*, ¶ 17. Plaintiff further alleges that he the purchased XTEND Energy (while in Maryland) from Amazon.com. *Id.*, ¶ 11.

"The Uniform Commercial Code adopted in Maryland requires a buyer to give notice to the seller for a breach of implied warranty." *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 542 (D. Md. 2011) (citing Md. Code Ann., Com. Law § 2-607(3)(a)). In Maryland, "if a plaintiff wishes to claim a breach of implied warranty against a manufacturer, the plaintiff must [first] notify their immediate seller of the breach." *Doll*, 814 F. Supp. 2d at 542 (citing *Lloyd v. General Motors Corp.*, 575 F. Supp. 2d 714 (D. Md. 2008). Supp. 2d at 542. "[A] notification to a seller within a reasonable time is a 'prerequisite' for claiming a breach of implied warranty." *Morris v. Biomet, Inc.*, No. GJH-18-2440, 2020 WL 5849482, at *11 (D. Md. Sept. 30, 2020) (quotation omitted). The same requirements apply to a breach of express warranty claim in Maryland. *Palmer v. CVS Health*, No. CV CCB 17-938, 2019 WL 6529163, at *6 n.17 (D. Md. Dec. 4, 2019) ("*Doll*, as well as *Lynx, Inc. v. Ordnance Products, Inc.* and *Lloyd v. General Motors Corp.*, [] involve claims for breach of implied warranty . . . It does not appear, however, that § 2-607(3)(a)'s notice requirement applies differently to a claim for breach of implied warranty than it does to a claim for breach of express warranty." (Collecting cases). "[A] lawsuit cannot

constitute notice of a breach' under Maryland law." *Stanley v. Central Garden and Pet Corp.*, 891 F. Supp. 2d 757, 772 (D. Md. 2012).

Plaintiff's Amended Complaint does not allege that Plaintiff notified Amazon.com, the seller of the at-issue product, of any purported breach of any express or implied warranty prior to bringing suit against Woodbolt, the manufacturer of the at-issue product. Woodbolt made this argument when it moved to dismiss Plaintiff's cause of action for breach of implied warranty in his original Complaint (Memorandum in Support of Motion to Dismiss Complaint, ECF No. 10-1, p. 20), yet Plaintiff failed to correct this deficiency prior to filing his Amended Complaint. Per clear and unambiguous precedent, Plaintiff's express and implied breach of warranty claims must fail, as Plaintiff has failed to comply with the Uniform Commercial Code. Because Plaintiff has failed to plead an adequate breach of express or implied warranty claim, Plaintiff does not have standing to bring such a claim on behalf of a nationwide class. These claims must fail.

### C. Plaintiff's Breach of Express Warranty Claim Fails for Lack of Privity

Plaintiff's Amended Complaint adds a new claim for relief for breach of express warranty. Plaintiff's express warranty claim must fail for both failing to conform to the Uniform Commercial Code (as discussed above), and for lack of privity (as discussed below).

"An express warranty is established by '[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain,' or '[a]ny description of the goods which is made part of the basis of the bargain.'" *Palmer v. CVS Health*, No. CV CCB 17-938, 2019 WL 6529163, at *6 (D. Md. Dec. 4, 2019) (quoting Md. Code., Com. Law. § 2-313(1)). To prevail on a claim for breach of express warranty under Maryland law, "a plaintiff is required to establish that 1) a warranty existed; 2) the product did

not conform to the warranty, and 3) the breach proximately caused the injury or damage."
*SpinCycle, Inc. v. Kalender*, 186 F. Supp. 2d 585, 589 (D. Md. 2002) (citation omitted).

Absent some recognized exception, it is hornbook law that only the parties to a contract can enforce it and that they may enforce it against only the parties to the contract. Therefore, absent some showing by the plaintiff of an exception to this requirement, privity is required for breach of contract claims.

*Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 322 (D. Md. 1983) (*citing* 2 Williston on Contracts §§ 273, 347, at 178–80, 793 (3d ed. 1959 & 1983 Supp.)).

While Maryland's General Assembly has eliminated the requirement of privity in many instances, "[p]rivity of contract remains an essential ingredient [] in a breach of express warranty action not involving personal injury, because privity between the plaintiff and defendant is requisite to maintain a contract action . . . ." *Addressograph-Multigraph Corp. v. Zink*, 273 Md. 277, 280 (1974) (citation omitted).

Plaintiff admits that he lacks privity with Woodbolt because he alleges that he purchased the Product through a third party. Plaintiff does not allege that he purchased any EXTEND Energy product directly from Woodbolt. Instead, and directly to the contrary, Plaintiff concedes that he purchased an EXTEND Energy product not from Woodbolt, the product's manufacturer, but from Amazon.com. Amended Complaint, ¶ 11. Plaintiff therefore has no privity with Woodbolt.

Without privity, Plaintiff cannot establish a breach of express warranty claim. *Compare H & M Co. v. Tech. Heat Transfer Servs., Inc.*, No. CIV.A. TDC-14-1518, 2015 WL 1472000, at *4 (D. Md. Mar. 30, 2015) ("H&M's claim for breach of express warranty will be dismissed because privity is a required element for such a claim. Based on the allegations in the Complaint,

there is no contractual privity between H & M and Defendants. H&M's contract was solely with TJO, and it was TJO that, in turn, contracted with THTS, which contracted with Atlantis. Therefore, the Complaint fails to state a claim for breach of express warranty." (Citations omitted)). Because Plaintiff here has no privity with Woodbolt, Plaintiff has no standing to bring an express breach of warranty claim on behalf of a class. Because Plaintiff's Amended Complaint fails to allege the required privity between Plaintiff and Woodbolt, Plaintiff's breach of express warranty claim must be dismissed.

**D.    Plaintiff Fails to Plead His Claims Based in Fraud With Particularity**

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." "The circumstances required to be pleaded with particularity 'include the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Van Buren v. Walmart, Inc.*, No. CV DKC 19-0911, 2020 WL 1064823, at *2 (D. Md. Mar. 5, 2020) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313–14 (D. Md. 2000)).

In addition to his plain-vanilla fraud claim for relief (Count III), Plaintiff's MCPA and unjust enrichment claims for relief (Counts V and VI) also sound in fraud. They too must be pled with particularity. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (explaining that the relevant section of the MCPA sounds in fraud, and requiring such MCPA claims to be pled with particularity); *Farasat v. Wells Fargo Bank, N.A.,* 913 F. Supp. 2d 197, 206 (D. Md. 2012) (same); *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 n. 10 (D. Md. 2009) (same); *State Farm Mut. Auto. Ins. Co.,* 2018 WL 6514797, at *4 (unjust enrichment claim based on the same facts as fraud claim must comply with the same heightened pleading standard).

Plaintiff's Amended Complaint completely fails to meet this heightened 9(b) threshold. In alleging he was defrauded by Woodbolt, Plaintiff simply states that he purchased an XTEND Energy product from Amazon somewhere in Maryland "[b]eginning in or around August 2018." Amended Complaint, ¶ 11. Plaintiff's Amended Complaint does not specify *which* (if any) of the ten (10) XTEND Energy products he references in his Amended Complaint (at ¶ 20) he allegedly purchased. He also fails to specify *when* he did (or didn't) purchase any of those products, and he does not specify *where* in Maryland he purchased one or more of the offending products.[6] As such, Plaintiff's fraud-based counts should be dismissed.

The court in *In re NJOY, Inc. Consumer Class Action Litig.*, No. CV1400428MMMRZX, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014), reached such a result when it was presented with similar allegations to those present here. The plaintiffs in that case asserted claims based on allegations that "they were exposed to and saw [d]efendant's material, deceptive marketing claims and packaging." *Id*. at *10. The plaintiffs did "not identify which advertisements they saw or where they saw them." *Id.* at *11. Instead the plaintiffs maintained that their pleading was sufficient because "they … included representative images of the misrepresentations in the complaint and identified at least one location or publication in which each was published or displayed during the relevant period." *Id*. The court held that such allegations were insufficient to satisfy Rule 9(b) and dismissed the claims. *Id.* at *12, *15. Faced with similarly inadequate

---

[6]     Plaintiff's Amended Complaint includes a vague assertion that Woodbolt sells other products in addition to XTEND Energy products making a "0 calories" claim. Amended Complaint, ¶ 2. Given that Plaintiff only alleges to have purchased (at most) a single XTEND Energy product, Amended Complaint, ¶ 11, reference to other Woodbolt products in the Amended Complaint's introduction is entirely irrelevant.

allegations, this Court should reach the same result and dismiss Plaintiff's inadequately pled claims.[7]

### E. Plaintiff's Amended Complaint Fails to Adequately Plead Reliance

Even if Plaintiff's Amended Complaint satisfied 9(b) (it does not), his fraud-based claims would still fall flat.

Under Maryland law, the elements of common law fraud are: 1) that the defendant made a false representation to the plaintiff, 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, 3) that the misrepresentation was made for the purpose of defrauding the plaintiff, 4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and 5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Van Buren*, 2020 WL 1064823, at *7. "[I]n cases of omission or non-disclosure like this one, 'the non-disclosed fact must be material, which means it must be one on which a **reasonable person** would rely in making a decision." *Id.* (quoting *Bourgeois v. Live Nation Entm't, Inc.*, 3 F. Supp. 3d 423, 460 (D. Md. 2014) (emphasis added).

Similarly, to properly plead a claim under the MCPA, "plaintiffs must adequately allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) (quotation omitted).

---

[7] Other courts have dismissed claims based on similarly lacking allegations. *See, e.g., Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1191 (N.D. Cal. 2018); *Spence v. Basic Research*, No. 2:16-cv-925-CW, 2017 U.S. Dist. LEXIS 85175, at *20 (D. Utah June 2, 2017); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *12 (N.D. Cal. July 23, 2013); *ADT Sec. Servs., Inc. v. Swenson*, No. CIV. 07-2983 (JRT/AJBf), 2008 WL 2828867, at *7 (D. Minn. July 21, 2008).

In order for his fraud-based claims to be colorable, Plaintiff must plead that he relied on the "0 calorie" claim in choosing to purchase an XTEND Energy product. *Id.* Plaintiff's Amended Complaint omits this necessary prong. While the Amended Complaint asserts Plaintiff was "misled into purchasing Woodbolt's nutritional powders with the belief that they do not contain any calories," Amended Complaint, ¶ 5, the Amended Complaint does not plausibly allege that Plaintiff would not have purchased XTEND Energy if he knew the product contained a fractional calorie count.[8] This omission dooms Plaintiff's fraud-based counts count.

The omission, however, is telling. XTEND Energy is not a weight-loss product. It is a pre-workout supplement. The Court may consider this fact, as it is highlighted in the links to the products included in Paragraph 20 of Plaintiff's Amended Complaint and therefore incorporated into the Amended Complaint by reference,[9] but the body of the Amended Complaint makes no mention of it at all. There is an obvious reason Plaintiff is reluctant to tell the Court the purpose for which this product is intended. While a "0 calorie" claim may be an added benefit to a pre-workout supplement, no reasonable consumer would base their purchase of a pre-workout supplement on a "0 calorie" claim. Moreover, this causes one to consider what possible damages could possibly arise out of this context and how any damages could rise above the above the level of pure speculation.

Plaintiff's Amended Complaint tries to side-step this issue by vaguely stating that he is "in the market for 0 calorie products due to health concerns." Amended Complaint, ¶ 24. But this

---

[8]     The one exception to this absence is discussed in Section F, below.

[9]     *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference . . . .").

bare allegation does not explain how Plaintiff (or anybody else) reasonably relied on a "0 calorie" claim in purchasing a pre-workout energy supplement. EXTEND Energy products are not marketed as weight loss products. They are marketed as pre-workout energy supplements. No reasonable consumer would purchase an energy supplement to lose weight. Plaintiff's vague insinuations that he and a theoretical class purchased an EXTEND Energy product, pre-workout energy supplement, to use "a dietary supplement that aids weight loss," Amended Complaint, ¶ 45, must fail.

### F.    Plaintiff's Non-Maryland Based State Statue Count Must Fail; Plaintiff Lacks Standing

Plaintiff attempts to plead reliance as to his Count VII, violation of non-MCPA state statutes, however, since Plaintiff did not plead reliance as to the MCPA, dooming his MCPA Count, Plaintiff does not have standing to represent absent class members regarding other state-law statutes.

Even if Plaintiff had pled reliance as to his MCPA Count, he still could not represent out-of-state purchasers of XTEND Energy products in any of their purported state-law counts based on non-Maryland consumer protection statutes.

In the context of a putative class action, the named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class. Absent such a requirement, a plaintiff would be able to bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized injuries relating to those states and drag[] defendants into expensive nationwide class discovery, potentially without a good-faith basis.

Because [t]he named plaintiff must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants, courts in the Fourth Circuit

have dismissed claims brought under the laws of states in which no named plaintiff is alleged to have been harmed.

*Mayor & City Council of Baltimore v. Actelion Pharm., Ltd.*, No. CV GLR-18-3560, 2019 WL 4805677, at *8 (D. Md. Sept. 30, 2019) (quotations omitted) (collecting cases).

Plaintiff has not pled that he purchased any XTEND Energy product anywhere other than in the State of Maryland, and as such does not have standing to represent any purchaser of XTEND Energy for purported violations of non-Maryland state statutes. *Compare Zaycer v. Sturm Foods, Inc.*, 896 F. Supp. 2d 399, 409 (D. Md. 2012) ("Zaycer was neither harmed by the Product, nor purchased the Product, in any state other than Maryland. Zaycer suffered no injury-in-fact, and is not in imminent danger of being injured by the Product in any of the states except Maryland. Because the injury to the named plaintiff occurred in Maryland, she has no standing to sue under any state consumer protection law except for Maryland's."). Because Plaintiff lacks standing to represent out-of-state consumers regarding out-of-state claims, his Count VII must be dismissed.

### G.     Plaintiff's Amended Complaint Fails to Adequately Plead Injury

In addition to failing to adequately plead reliance, Plaintiff has failed to adequately plead that he (or anyone else) was injured by purchasing the product. XTEND Energy is a pre-workout energy supplement. Amended Complaint, ¶ 20. The stated purpose of the product, as shown in the photographs included in Paragraph 20 of Plaintiff's Complaint, is for "Muscle Recovery + Electrolytes." *Id.*[10]

---

[10]     The Amended Complaint's contrary statement that the "ordinary purposes of [XTEND Energy's] use [is as] a dietary supplement that aids weight loss," Amended Complaint, ¶ 45, is facially false, and the Court need not accept it as true. "[N]aked assertions devoid of further factual enhancement are not entitled to the presumption of truth." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quotation omitted).

Plaintiff's Amended Complaint does not allege that the XTEND Energy products do not work for their intended use, which is "muscle recovery." Plaintiff does not allege that he was injured by consuming XTEND Energy. Plaintiff does not even allege that he gained unwanted weight after consuming the product. Plaintiff alleges no cognizable injury at all.

Plaintiff *does* state that he was "injured" by purchasing the product, but he never explains what that injury was, nor does he provide the Court with any information regarding his alleged damages that arose out of this phantom injury. For example, in Paragraph 103 of his Amended Complaint, Plaintiff asserts, that XTEND Energy "caused injury to consumers far more than any conceivable benefit." Without more, recitation of such boilerplate legal "conclusions, couched as factual allegations, are insufficient to nudge the complaint [] across the line from conceivable to plausible." *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *5 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017).

Plaintiff's failure to adequately plead injury (along with his accompanying failure to plead damages arising out of his empty claim of injury) dooms his Amended Complaint. Plaintiff's breach of implied warranty, breach of express warranty, fraud, and MCPA Counts again fail due to this fundamental deficiency. *See Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 157 (2007) (breach of warranty requires injury to state a claim); *Van Buren*, 2020 WL 1064823, at *7 (fraud requires severe injury to state a claim); *Currie.*, 950 F. Supp. at 796 (MCPA claim requires actual injury to state a claim). The same is true of his unjust enrichment count because Maryland law does not allow for an unjust enrichment claim "without an accompanying underlying tort." *Washington Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 718 (D. Md. 2020). Without a cognizable injury, there can be no underlying tort. Plaintiff is left with nothing.

**H.       Plaintiff Does Not Have Standing to Request Injunctive Relief**

Plaintiff repeatedly alleges that the "0 calorie" claim is "deceptive," "false," and "misleading." *See*, *e.g.*, Amended Complaint, ¶¶ 2, 9, 101. Based on these allegations, Plaintiff will certainly not purchase XTEND Energy in the future. Plaintiff therefore lacks Article III standing to request any injunctive relief relating to Good Start because she will not purchase Good Start in the future and therefore lacks any future harm. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (setting elements of Article III standing).

Although Plaintiff alleges that he purchased XTEND Energy at some point in the past, a past purchase alone does not confer standing. In the Fourth Circuit, allegations of future injury and not past harm are required to establish standing for the equitable remedy of an injunction. *Beck v. McDonald*, 848 F.3d 262, 277 (4th Cir. 2017) ("[A]bsent a sufficient likelihood that [Plaintiffs] will again be wronged in a similar way, . . . past events, disconcerting as they may be, are not sufficient to confer standing to seek injunctive relief.") (quotations omitted); *Palmer v. CVS Health*, No. CV CCB 17-938, 2019 WL 6529163, at *4 (D. Md. Dec. 4, 2019) (dismissing claim for injunctive relief because plaintiff did not plausibly allege future threat of harm) (citation omitted). Indeed,

Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."

*Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991) (citation omitted).

Plaintiff's Amended Complaint has made his feelings about XTEND Energy crystal clear. If the Amended Complaint informs the Court and Woodbolt of one thing, it is that Plaintiff

will never purchase another XTEND Energy product again. As such, Plaintiff has no standing for a forward-facing request for injunctive relief.

## CONCLUSION

Because it is preempted, and because it fails to state a claim for which relief could be granted, the Court should dismiss Plaintiff's Amended Complaint, in full and with prejudice.

Dated: February 26, 2021

Respectfully Submitted,

*/s/ Bezalel A. Stern*
Bezalel A. Stern (MD Bar No. 20667)
bstern@kelleydrye.com
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street NW
Washington, DC 20007
Telephone: (202) 342-8422
Facsimile: (202) 342-8451

- and –

Geoffrey W. Castello (*pro hac vice* to be filed)
gcastello@kelleydrye.com
KELLEY DRYE & WARREN LLP
NJ Attorney ID No. 021091995
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

*Counsel for Defendant Woodbolt Distribution, LLC*