**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| DANIEL METAGUE, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>WOODBOLT DISTRIBUTION, LLC, d/b/a NUTRABOLT,<br><br>        Defendant. | Case No: 8:20-cv-02186-PX |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

Plaintiff Daniel Metague, on behalf of himself and all others similarly situated, (hereinafter, "Plaintiff"), has reached a settlement with Defendant Woodbolt Distribution, LLC, d/b/a Nutrabolt (hereinafter referred to as "Defendant," "Woodbolt" and/or "Defendant Woodbolt"), and seeks: (1) preliminary approval of the Proposed Class action settlement; (2) certification of the putative class for purposes of the proposed settlement; (3) an Order directing that notice of the proposed settlement be sent to the certified class; and (4) an Order setting the deadlines for filing claim forms, opt-out forms, and objections to the settlement, appointing Class Counsel to represent the Settlement Class, and the scheduling of a final fairness hearing on the proposed settlement. Relatedly, the Court should find the Settlement Agreement attached hereto as Exhibit 1 ("Agreement" or "Settlement Agreement") is a fair and reasonable resolution of the dispute and dismiss with prejudice Plaintiff's claims. In support of his Motion, Plaintiff states as follows:

## I.    <u>INTRODUCTION</u>

This is a class action case wherein Plaintiff Daniel Metague alleged that Defendant Woodbolt engaged in misleading and deceptive practices in its manufacture and sale of nutritional powders containing branched-chain amino acids (hereinafter referred to as "BCAAs") called "XTEND® Energy" (hereinafter "XTEND Energy" and/or "the Product(s)"). Woodbolt marketed, labeled, advertised and sold these Products as containing "0 calories." However, Plaintiff has analyzed and evaluated the Products and contend that they contain between 30-50 calories per serving.   Woodbolt denies Plaintiff's allegations and maintains that its marketing, labelling and advertising has been, and continues to be accurate and compliant with the regulations that govern the labelling of dietary supplements under the Food, Drug and Cosmetic Act. Plaintiff asserts that Woodbolt's practices of allegedly falsely advertising the calorie content of the Product injured Plaintiff and the Proposed Class as they purchased a product containing far more than the advertised "0 calories."  Woodbolt denies that any consumer of the Product has been injured.

Plaintiff filed the operative Amended Complaint in this case on January 28, 2021, alleging violations of the Maryland Consumer Protection Act ("MCPA") and other common law causes of action. *See generally* Amended Complaint, Jan. 28, 2021, Doc. # 16. Thereafter, Woodbolt filed a Motion to Dismiss on February 26, 2021. On April 5, 2021, Plaintiff filed his Response in Opposition to Woodbolt's Motion to Dismiss. On June 16, 2021, the Court issued its Memorandum Opinion on Woodbolt's Motion to Dismiss. See Memorandum Opinion on Motion to Dismiss, June 16, 2021, Doc. # 24. The Court denied Woodbolt's Motion to Dismiss in part and granted it in part. While the Court dismissed a few of Plaintiff's common law causes of action, the Court primarily upheld Plaintiff's Amended Complaint. Woodbolt thereafter filed a Motion for Reconsideration, which has not yet been ruled on.

After Defendant answered Plaintiff's Amended Complaint, the Parties filed a Joint Motion to Stay the proceeding on July 26, 2021, in order for the Parties to attempt to resolve this matter. The Court granted that motion on July 27, 2021. On September 28, 2021, Plaintiff and Woodbolt participated in an all-day mediation with the Honorable Jose L. Linares (Ret.) of McCarter & English. After months of shuttle diplomacy conducted by Judge Linares, and many months of arduous negotiations thereafter, the Parties reached a Proposed Settlement with respect to all claims involving Woodbolt in this action (the "Settlement") that is reflected in the Proposed Settlement Agreement, Exhibit. 1; *see also* Declaration of Nicholas A. Migliaccio (Migliaccio Declaration), Exhibit. 2.

Under the Settlement, Woodbolt will pay $3,000,000 (the "Settlement Amount") into a non-reversionary Common Fund. This is an "all-in" amount that includes Plaintiff's attorneys' fees, costs, and costs of settlement administration. Settlement Class Members will timely submit a valid claim form to seek reimbursement at $0.50 per package where there is proof of purchase, a maximum recovery of $50.00 per household. Without proof of purchase, the maximum recovery is $25.00 per household. Settlement Class Members may choose to object and or opt-out of the Settlement. The Settlement provides substantial benefits to Settlement Class Members without the time or expense of protracted, adversarial litigation. Therefore, Plaintiff respectfully requests that this Court grant this Motion for Preliminary Approval of the Class Action Settlement. Granting Plaintiff's motion will allow the Parties to proceed with the Notice Plan outlined by the Settlement. As shown below, the terms of the Settlement confer a fair, reasonable, and substantial benefit upon the Members of the Proposed Class.

In accordance with Federal Rule of Civil Procedure 23(e), Plaintiff requests that the Court: (1) preliminarily approve the Proposed Settlement Agreement pursuant to Fed. R. Civ. P. 23(c) and

(e); (2) preliminarily certify the Proposed Settlement Class; (3) approve the Proposed Class notice and forms; (4) set the deadlines for filing claim forms, opt-out forms, and objections to the Settlement; (5) appoint Class Counsel to represent the Settlement Class; and (6) schedule a final fairness hearing to consider final approval of the Proposed Settlement and approval of attorneys' fees and costs.

## II.    THE KEY TERMS OF THE SETTLEMENT

Plaintiff and Defendant have agreed, subject to approval by this Court, to enter into a Settlement Agreement. The details of the Settlement are contained in the Settlement Agreement, Ex. 1. The Proposed Settlement resolves all of Plaintiff's claims against Defendant for the Proposed Class:

### A.    The Proposed Class

Plaintiff proposes that the following class be conditionally certified by the Court for settlement purposes only:

> All persons, other than Excluded Persons, who, during the Class Period purchased in the United States at least one of the Products, including, but not limited to, the XTEND Products set forth in Paragraph 2.39 of the Settlement Agreement, Ex. 1, from within six (6) years prior to the filing of the action to the Preliminary Approval Date.

(the "Settlement Class"). Ex. 1, Sett. Agreement, ¶ 2.46.

### B.    The Proposed Settlement Benefits

The Proposed Settlement provides for the establishment of a non-reversionary Common Fund of $3,000,000.00. Section 3.20 of the Settlement Agreement provides as follows:

> For those Class Members who submit Valid Claims, Cash Payments shall be paid by check sent via first-class mail to the mailing address provided on the Claim Form or at the election of the Settlement Class Member on the Claim Form, by direct deposit into the Settlement Class Member's bank account, or another form of electronic transfer (such as PayPal, Venmo, Google Wallet, or Square Cash). All Valid Claims shall be paid by the Settlement Administrator by the Distribution Date.

The Parties estimate Settlement Class Members may seek reimbursement at $0.50 per package where there is Proof of Purchase, a maximum recovery of $50.00. Without Proof of Purchase, the maximum recovery is $25.00.

**C.    The Proposed Settlement Administrator**

The Parties have agreed to and seek Court approval for the appointment of Kroll Settlement Administration LLC as the Settlement Administrator ("Kroll" or "Settlement Administrator"). Under the terms of the Settlement Agreement, pursuant to the Settlement Agreement, the amount paid the Settlement Administrator is in addition to the Settlement Benefits for the Settlement Class. The Settlement Administrator's duties are defined in Section 4.2 of the Settlement Agreement and include, inter alia, sending the Notices pursuant to Section IV of the Settlement Agreement and as approved and directed by the Court, preparing reports regarding the Notice as directed by Parties' Counsel and the Court, accepting and reporting on Requests for Exclusion received by the Exclusion Deadline, establishing and maintaining a website relating to the Settlement, opening an account for the deposit of the Class Cash Fund, paying the Settlement Benefits to eligible Settlement Class Members, paying the court-approved Service Award to the Class Representative, paying the court-approved Attorneys' Fees and Expenses to Class Counsel, preparing and issuing required tax documents, and other duties as laid out in the Settlement Agreement.

### D.    The Proposed Notice Plan

The proposed Notice Plan for the Settlement is described in Section IV of the Settlement Agreement and has been designed to provide the best practicable notice of the Settlement, in accordance with Fed. R. Civ. P. 23(e), to the members of the Settlement Class through individual mail notices and postings on the Settlement Website, and online publication. As detailed in the attached Declarations of Jeanne C. Finegan and Scott M. Fenwick (attached hereto as Exhibits 3 and 4), the Court-approved Notices will be sent by the Settlement Administrator to the Settlement Class Members by first-class mail to the Class Members' last known address and by email for Class Members who have provided an email address. Notice shall also be provided by online publication. *See* Exhibits 3 and 4.

The Settlement Administrator also shall establish and maintain a website relating to the Settlement (the "Settlement Website") on which it will post copies of the mailed Notice, the Amended Complaint in this Litigation, and, following their issuance, the Preliminary Approval Order, Final Approval Order, and Final Judgment Order pertaining to this Settlement, as well as contact information for the Settlement Administrator. The Settlement Website shall be established no later than thirty (30) days after the issuance of the Preliminary Approval Order and will remain active for one hundred and sixty (60) days after all Settlement Benefits are distributed unless the Settlement Agreement is terminated earlier. *See* Exhibits 3 and 4.

In the settlement context, a notice should advise the Settlement Class Members of their rights to exclude themselves from the action, but at the same time afford maximum flexibility for the courts, consonant with due process safeguards. *4 H. Newberg & A. Conte, Newberg on Class Actions*, § 8:17 (5th ed. 2013); see also *Manual for Complex Litigation* § 30.212 (4th ed. 1995).

6

See also Rule 23(c)(1)(B). The proposed Notices attached as Exhibits to the Settlement Agreement, meet these requirements and has been approved by both Parties.

### E.    Class Members' Right to Object to and Opt-Out of the Settlement

Consistent with Fed. R. Civ. P. 23, any member of the Settlement Class shall have the right to object to the Settlement by filing a written Objection with the Court at the address listed in the mailed Notice and by mailing copies thereof to the Parties' Counsel. Such Objections are due sixty (60) calendar days after the Notice Date and shall be filed by Plaintiff no later than the Deadline established by the Court, which shall not be more than twenty-one (21) days prior to the initially scheduled Final Approval Hearing, or as otherwise ordered by the Court. In addition, any member of the Settlement Class shall have the right to opt-out of the Settlement by sending a written Request for Exclusion to the Settlement Administrator at the address listed in the mailed Notice. Such opt-out requests must be received by the Settlement Administrator no later than the Exclusion Deadline set by the Court.

### F.    The Proposed Release

Defendant will receive a Release of Claims from the date of Final Approval unless a Class Member submits a timely and valid Opt-Out Form. In that case, any such class member will retain his or her individual claim, but all class claims shall be released in full.  The Release will apply to all claims arising from or related to the issue of calorie content in the XTEND Products.

### G.    The Proposed Service Award and Class Counsel Fees

Section VI of the Settlement Agreement grants the Class Representative the right to file a motion with the Court, for a Service Award to the Class Representative not to exceed Seven Thousand Five Hundred Dollars ($7,500.00). Any Service Award to the Class Representative, approved by the Court, shall be paid from the Class Cash Fund and shall be in addition to the

7

Settlement Benefits payable to the Class Representative. Additionally, Section VI of the Settlement Agreement grants Class Counsel the right to petition the Court for an award of attorneys' fees and expenses in the amount of not more than one-third (33.33%) of $3,000,000.00, plus fees and expenses incurred in the prosecution and Settlement of the Litigation Claims. Payment of any award of Attorneys' fees and Expenses shall come from the Class Cash Fund as set forth in Section III of the Settlement Agreement.

## III.     ARGUMENT

### 1.     THE PROPOSED SETTLEMENT MEETS THE PRELIMINARY APPROVAL STANDARD BECAUSE IT IS FAIR, ADEQUATE, AND REASONABLE.

#### a.     Legal Standard

Federal courts must approve class action settlements and ensure that Settlement Class Members receive sufficient notice of the settlement and that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The approval of a class action settlement entails a two-step process. Initially, the court makes a preliminary determination of the settlement's fairness. Preliminary Approval is granted when a Proposed Settlement is "within the range of possible approval," *Benway v. Resource Real Estate Services*, LLC, 2011 U.S. Dist. LEXIS 28425, *13-14 (D. Md. Mar. 16, 2011), and the "principal legal effect of [an order grant preliminary approval] is to allow notice to issue to the potential beneficiaries of the Settlement," *In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. 1379, 1381 (D. Md. 1983). If the court preliminarily determines that the settlement is fair, Settlement Class Members are notified of the Settlement and a final fairness hearing is scheduled. Later, at the final fairness hearing, the court undertakes a more thorough evaluation of the settlement's fairness, reasonableness, and adequacy. *See generally*

*Benway v. Resource Real Estate Services, LLC*, 2011 U.S. Dist. LEXIS 28425, *13-14 (D. Md. Mar. 16, 2011).

      **b.**      **The Proposed Settlement is Fair.**

      *i.*      ***Settlement was Reached Through Arm's-Length Bargaining***

"A settlement is fair if it was reached as a result of good faith bargaining at arm's length, without collusion*." Whitaker v. Navy Fed. Credit Union*, 2010 WL 3928616, at *2 (D. Md. Oct. 4, 2010). In determining whether the settlement is "fair," the court should consider:

> "(l) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation." *Id.*

To determine if the proposed terms are fair, the court should consider factors tending to show "the presence or absence of collusion among the Parties." *In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. 1379, 1383 (D. Md. 1983). The Settlement reached by the Parties was the product of arm's-length negotiations by Counsel with extensive experience in litigating class action claims. *See* Migliaccio Dec.. Each party was independently represented by Counsel throughout this litigation. During the all-day mediation, Counsel for each Party was obligated to and did vigorously represent their client's rights. *Id.* The Parties did not reach an agreement at the mediation, and the negotiations continued for several months by shuttle diplomacy conducted by Judge Linares, and many months thereafter between the Parties. These negotiations were contentious at times. *Id.*

Based on the information obtained through their exhaustive investigation and negotiations, the Parties settled on the Proposed Settlement Agreement, Ex. 1. The robustness of this Settlement is evidence that it was the result of arm's-length bargaining.

      *ii.*      **The Posture of the Case and Extent of Discovery**

The posture of the case supports preliminarily approving the Settlement. While the case has not moved into formal discovery, the Parties have exchanged confidential discovery pursuant to Fed. R. Evid. 408 for many months. During that period, Defendant has produced, and Plaintiff has reviewed, numerous pages of documents. Moreover, the Plaintiff had the benefit of regularly consulting with an industry expert throughout this period. See *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 480 (D. Md. 2014) ("The record shows that the Parties have engaged in informal discovery, assuring sufficient development of the facts to permit an accurate assessment of the merits of the case.")

Plaintiff's Counsel had sufficiently advanced this case at the point that the Parties reached a settlement. *See* Ex. 2. Prior to reaching a settlement, Plaintiff's Counsel conducted an extensive investigation relating to the Class Claims and the underlying events and researched the applicable law with respect to the potential claims and defenses. *Id.* The investigation and informal discovery conducted by the Parties in this case was comprehensive and time-consuming. Information and documents concerning the claims and defenses were exchanged, reviewed, and processed by each side. Indeed, there is no dispute that the Parties thoroughly investigated the relevant facts and legal issues through every means available. *Id.* Such an undertaking yielded substantial information, which allowed the Parties to discuss the scope of the suit and the necessary remedies for problems reported by Plaintiff and Putative Class Members intelligently and accurately to assess and discuss the pros and cons of settlement.

### iii.    The Circumstances Surrounding the Negotiations

The circumstances surrounding the Parties' settlement negotiations supports the Settlement. As indicated above, the Parties engaged in a mediation before the Honorable Jose L. Linares (Ret.) of McCarter & English. The Parties appeared before Judge Linares for a mediation

session in September of 2021. Judge Linares is a retired federal district judge and an experienced mediator. Following the September 2021 mediation session, the Parties continued to mediate this matter with Judge Linares's assistance and finally reached an agreement in principle. Migliaccio Dec. December of 2021, several months after the initial mediation date. The subsequent settlement negotiations that resulted in the Settlement were all conducted at arm's length by experienced Counsel for the Parties. The amount of attorneys' fees was discussed only after the substantive relief for the Settlement Class was agreed upon. As such, the circumstances surrounding the negotiations supports preliminarily approving the Settlement. Plaintiff's and Woodbolt's Counsels' experience in realistically assessing the benefits of resolving the litigation by settling, reflect an informed and vigorous arm's length negotiation. See *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).

### iv.     *Plaintiff's Counsel is Experienced in Similar Litigation*

The experience of Class Counsel also supports preliminarily approving the Settlement. The experience of Class Counsel is detailed in the accompanying firm resumes. See *In re Am. Capital Shareholder Derivative Litig.*, No. 11-2424-PJM, 2013 WL 3322294, at *4 (D. Md. June 28, 2013) (finding affiliation with well-regarded law firms with strong experience in the relevant practice area supports preliminary approval). Plaintiff's Counsel has extensive experience and qualifications in this area of law. Migliaccio & Rathod LLP is an experienced class action firm, including in the areas of unfair and deceptive trade practice and defective product actions. Migliaccio Dec. Partners Nicholas A. Migliaccio and Jason S. Rathod have been litigating class action cases on behalf of plaintiffs for over 20 years. Robert Peirce & Associates, P.C. also has significant class action experience, and the Law Offices of Robert Mackey has significant experience in complex litigation. *See* Migliaccio Dec; see also Declaration and Firm Resume of

D. Aaron Rihn and Firm Resume of Robert Mackey, attached hereto as Exhibits 5 and 6. Thus, Plaintiff's Counsel has extensive complex litigation experience and are frequent writers and lecturers on defective products and unfair and deceptive trade practices, among other topics.

### c.    The Proposed Settlement is Adequate.

In evaluating the adequacy of a Proposed Settlement, the trial court should "weigh the likelihood of the Plaintiff's recovery on the merits against the amount offered in settlement." *In re Mid-Atl. Toyota*, 564 F.Supp. at 1384. In so doing, the court should consider:

> (1) the relative strength of the Plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Whitaker*, 2010 WL 3928616, at \*2. (internal citations omitted); *accord*, *Herrera v. Charlotte Sch. of Law*, 818 Fed. Appx. 165, 176 - 177, n. 4 (4th Cir. 2020) (recognizing the Fourth Circuit will continue to apply its traditional adequacy standard because it "almost completely overlaps with the new Rule 23(e)(2) factors, rendering the analysis the same") (quoting *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474, n.8 (4th Cir. 2020)).

### i.    The Relevant Strength of Plaintiff's Case on the Merits

Class Counsel has carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages. While Class Counsel believes that the deceptive trade practice claims against Defendant are strong and could be proven at trial, a finding of liability is never assured, especially in complex litigation.

### ii.    The Existence of any Difficulties of Proof or Strong Defenses

12

Even with a strong factual and legal case, the Class Members face significant risks in establishing liability and damages. Further risks exist as they relate to final certification of a class, overcoming attempted decertification, and surviving any appeal. Indeed, substantial risks and uncertainties were present from the outset of this case that made it uncertain that any relief for the Class Members would be obtained. Class Counsel's view on the probability of any success on the merits was certainly influenced by the fact that Defendant has legal and factual grounds available to defend this action. Defendant contends that the Plaintiff lacks an injury and thus standing to bring this case. While the Court did not reach that determination in the Motion to Dismiss stage, it could do so in the Class Certification stage. The existence of these arguments may bolster Defendant's defenses, which, if resolved in Defendant's favor, would undoubtedly have a detrimental impact on the restitution available to the Class Members.

While Class Counsel takes issue with the viability of some of these alleged defenses, the risks associated with the continued litigation of Plaintiff's claims simply cannot be disregarded in measuring the reasonableness of the settlement.

### iii.    *The Anticipated Duration and Expense of Additional Litigation*

Settling this case now avoids certain and significant additional fees, costs, and delay. It also saves the Parties from years of litigation and saves the Court's precious resources. There is no question that continuing to litigate would result in prolonged, costly, and contentious discovery, as well as complex motions and trial practice and potential appeal to the 4th Circuit Court of Appeals. This would likely add at least two years to the possibility of relief for the Settlement Class, and possibly much longer. The avoidance of certain delay, attorneys' fees, expenses, and costs further weighs in favor of approval now.

### iv.    *Solvency of Defendant and Likelihood of Recovery on a Litigated Judgment*

There is currently no concern that recovery on a litigated judgment would be impacted by the Defendant's solvency.

### v.    The Degree of Opposition to the Settlement

The Parties are not aware of any current or potential objectors to the Settlement.

### d.    The Proposed Settlement is Reasonable.

Based on the foregoing, the Parties contend that the Settlement is fair, adequate and within the range of possible final approval such that it is reasonable. Accordingly, the standards for Preliminary Approval under Fed. R. Civ. P. 23(e) are met, and the Parties request Preliminary Approval of the Proposed Settlement by this Court.

## 2.    THE PROPOSED SETTLEMENT CLASS SATISFIES THE STANDARD FOR CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS

In connection with granting Preliminary Approval, Plaintiff requests that the Court certify for settlement purposes the following Settlement Classes, as defined in the Agreement:

> All persons, other than Excluded Persons, who, during the Class Period purchased in the United States at least one of the Products, including but not, limited to the XTEND Products set forth in (Paragraph 2.39 of the Settlement Agreement, Ex. 1) from within six (6) years prior to the filing of the action to the date of Preliminary Approval.

"Even before a court has certified a class, putative class plaintiffs may reach an agreement of settlement with defendants. In such cases, plaintiffs may seek to give effect to this settlement through a settlement-only class." *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *2 (E.D. Va. Sept. 23, 2015); see also, See *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIG. (4th) § 21.632 ("The judge should make a preliminary determination that the Proposed Class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)"). Since the proposed certification of the Settlement Class is for

settlement only, the typical rigorous class certification inquiry and review by the Court need not be strictly followed. The prerequisites for class certification under Rule 23(a) are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, each of which is satisfied here. Fed. R. Civ. P. 23(a). A similar settlement class of borrowers arising out of the All-Star Scheme was recently certified for settlement purposes by this Court. See *Donaldson v. Primary Residential Mortgage, Inc.*, Case No. 1:19-cv-01175-ELH, ECF No. 49 (D. Md. Jan. 11, 2021).  See also *Craighead v. Full Citizenship of Md., Inc.*, Civil Action No. PX-17-595, 2018 U.S. Dist. LEXIS 126343 (D. Md. July 27, 2018) (Judge Xinis found that all prerequisites under Rule 23(a) were met in a wage payment class action).

### a.    The Elements of Rule 23(a) are Satisfied for Settlement Purposes.

#### i.    *Numerosity*

The numerosity requirement is met if the class is so large that joinder of all members would be impractical. Fed. R. Civ. P. 23(a)(1). There is no set minimum number of potential class members that fulfills the numerosity requirement. *Robinson v. Fountainhead Title Group Corp.*, 252 F.R.D. 275, 278 (D. Md. 2008) (citing *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 361 (D. Md. 2004)). See also *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984). However, where the class numbers twenty-five or more, joinder is usually impracticable. *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 770 (D. Md. 2012) (citing *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1997)).

Preliminary discovery has confirmed that the Class is comprised of thousands of individuals who purchased Woodbolt's Product nationwide, making joinder impractical. These individuals are geographically dispersed throughout the nation making the size of the class so

numerous that joinder of all members in one action would be impracticable. Accordingly, Plaintiff

satisfies the numerosity requirement of Rule 23(a)(1).

### ii.    Commonality

Fed. R. Civ. P. 23(a)(2) requires questions of law and fact to be common to the class.

See *Hewlett v. Premier Salons International, Inc.*, 185 F.R.D. 211, 215 (D. Md. 1997) (citations

omitted)). To satisfy Rule 23(a)(2), plaintiffs need only "exhibit a common nucleus of operative

facts." See *Brown v. Eckard Drugs, Inc.*, 663 F.2d 1268, 1275 (4th Cir. 1981). See also *Robinson

v. Fountainhead Title Grp. Corp.*, 252 F.R.D. 275, 287 (D. Md. 2008); *Ealy v. Pinkerton Gov't

Servs.*, 514 F. App'x 299, 304 (4th Cir. 2013). Where questions common to class members

present significant issues that can be resolved in a single adjudication "there is clear justification

for handling the dispute on a representative rather than on an individual basis." *Amchem

Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (internal quotation marks and citation

omitted). However, the common contention "must be of such a nature that it is capable of class

wide resolution—which means that determination of its truth or falsity will resolve an issue that

is central to the validity of each one of the claims in one stroke." *See Wal-Mart Stores, Inc. v.

Dukes*, 564 U.S. 338, 349-50 (2011).

Here, there are numerous questions common to the class. Specifically, whether

Woodbolt's "0 calorie" representation is false and misleading, whether Woodbolt engaged in

fraudulent practices as to the Class Members, whether Woodbolt violated state consumer

protection laws by misrepresenting the number of calories in its Products, whether Woodbolt's

conduct violates the MCPA, whether Woodbolt deliberately misrepresented material facts to

Plaintiff and the Proposed Class Members, whether the Proposed Class Members may be

notified and warned regarding the calorie count of the Product and have the entry of final and

injunctive relief compelling Woodbolt to stop its misrepresentations, and whether Plaintiff and the Proposed Class Members suffered damages because of Woodbolt's misconduct and, if so, the proper measure of damages. Resolution of these questions, which are common to the Proposed Class Members, will generate common answers apt to drive the resolution of the litigation. Accordingly, Plaintiff will satisfy the numerosity requirement of Rule 23(a)(2). Thus, the Putative Class fulfills the commonality requirement.

### iii.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative Parties are typical of the claims or defenses of the class." To be typical, the Plaintiff's "interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). In other words, the plaintiff's claim "cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." Id. at 466-67. "[A] plaintiff's claim may differ factually and still be 'typical' of the claims of class members if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Bullock v. Board of Education of Montgomery Cnty.*, 210 F.R.D. 556, 560 (D. Md. 2002).

Here, Plaintiff Daniel Metague seeks to represent Class Members who, like he, purchased Woodbolt's Products based upon Woodbolt's advertisements that the Products contained "0 calories." After testing of the Products, Plaintiff found that Woodbolt's Products contained far more than the "0 calories" the consumers were promised, the Proposed Class Members share a common interest in proving Plaintiff's allegations. Accordingly, Plaintiff satisfies the typicality requirement of Rule 23(a)(3).

### iv.    *Adequacy*

The fourth prong of Fed. R. Civ. P. 23(a)(4) requires that Class Representatives demonstrate that they will "fairly and adequately protect the interests of the class." The adequacy requirement has two components: (1) the interests of the plaintiff and other members of the class must coincide; and (2) it must appear that plaintiff and his attorney will vigorously prosecute the action. *Edelen v. Am. Residential Servs., LLC*, Civil Action No. DKC 11-2744, 2013 U.S. Dist. LEXIS 102373 (D. Md. July 22, 2013). *See also Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006).

Here, as previously stated in the above sub-section, Plaintiff's claims and the Proposed Class Members' claims are interrelated in that both the Plaintiff and the Proposed Class Members all sought out a nutritional supplement with "0 calories" and instead purchased and received Woodbolt's Product that contained far more than the "0 calories" advertised by Woodbolt. In turn, the Plaintiff and the Proposed Class Members all have a basis to pursue the same causes of action against Woodbolt. Plaintiff understands and has accepted the obligations of a class representative and has adequately represented the interests of the Putative Class. Indeed, the Plaintiff has devoted much time and effort in prosecuting the Class Claims and assisting his Counsel with investigating and litigating the case. As to the adequacy of Plaintiff's Counsel, the attorneys that Plaintiff has retained, are vastly experienced in prosecuting class actions and will adequately represent the interest of the Class. Further, Plaintiff has no conflict of interest that will interfere with the maintenance of this class action. *See* Exs. 2, 3, and 4. Accordingly, Plaintiff has met the adequacy requirement of Rule 23(a)(4).

### b.    The Elements of Rule 23(b)(3) Are Satisfied.

#### i.    *Predominance*

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Certification under Fed. R. Civ. P. 23(b)(3) is appropriate when "settling the Parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort, and expense' and promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 559 (D. Md. 2006) (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 501 (D. Md. 1998) (citations omitted)). First, the predominance inquiry focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations. *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 499 (D. Md. 2010). The predominance inquiry tests whether the Proposed Classes are sufficiently cohesive to warrant adjudication. *Amchem*, 521 U.S. at 623. "Deciding whether common questions predominate over individual ones involves a qualitative, rather than quantitative, inquiry." *Singleton v. Domino's Pizza*, LLC, 976 F. Supp. 2d 665, 677 (D. Md. 2013) (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003)). Under Fourth Circuit law, "Plaintiffs must show that the issues they seek to litigate are ones that are 'readily susceptible to class wide proof.'" *Lloyd v. GMC*, 275 F.R.D. 224, 228 (D. Md. 2011) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.* 155 F.3d 331, 341 (4th Cir. 1998)).

Because Plaintiff relies primarily on common evidence to establish the Defendant's liability, the Class will satisfy the predominance requirement. See *Tyson Foods, Inc.*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and brackets omitted) ("common question is one

where the same evidence will suffice for each member to make prima facie showing or the issue is susceptible to generalized class-wide proof"). Here, the questions of law or fact common to the members of the class would predominate because the most significant issues in the case all pertain to uniform conduct by Woodbolt — including its uniform labeling and advertising, its knowledge and notice of the defects in its Products, and the willfulness of its conduct. Moreover, it is well established in this circuit that the presence of individual damages will not preclude class certification. See *Stillmock*, 385 Fed. Appx. at 273; *Ealy v. Pinkerton Gov't Servs.*, 514 Fed. Appx. 299, 305 (4th Cir. 2013) (reaffirming *Stillmock's* majority holding that the existence of individual statutory damage issues do not preclude class certification.) Defendant has not identified individual issues that would compromise the legal claims of the Putative Class and Plaintiff cannot identify individual issues that would predominate over the Putative Class's common legal claims and questions considering Defendant's uniform conduct.

### ii.        Superiority

The second and final requirement of Fed. R. Civ. P. 23(b)(3) is "that a class action be superior to other methods for the fair and efficient adjudication of the controversy." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. at 79-80 (D. Md. 1991). The superiority inquiry weighs the following factors: (1) the strength of the individual class members' interest in controlling the prosecution and defense of a separate action, (2) the extent and nature of existing litigation already begun by or against class members, (3) the desirability or undesirability of concentrating the litigation in the single forum selected by the class plaintiffs, and (4) the likely difficulties in managing the class action. *Lloyd v. Gen. Motors Corp.*, 275 F.R.D. 224, 228 (D. Md. 2011). Each of these factors demonstrate superiority is satisfied.

Here, without Plaintiff pursuing class claims against Woodbolt, the Proposed Class Members are left with two feasible alternatives: (1) pursuing their claims on an individual basis; or (2) not pursuing their claims at all. Compared to these two alternatives, the facts of this case demonstrate that the class action mechanism constitutes a superior means of adjudicating the claims, preserves judicial resources, and provides the prosecution of claims of otherwise incapable Proposed Class Members.

The Settlement Agreement provides the Putative Class Members with an ability to obtain prompt, predictable, and certain relief, whereas individualized litigation carries with it great uncertainty, risk, and costs, and provides no guarantee that any injured Putative Class Member will obtain necessary and timely relief at the conclusion of the litigation process. The class action device also could conserve judicial resources by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. Litigation costs surely would surpass the average recovery for each Putative Class Member. For these reasons, the Proposed Settlement Class should be certified.

### 3.    THE COURT SHOULD APPROVE THE NOTICE PLAN

The federal rules require that before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In accordance with Fed. R. Civ. P. 23(e) and the relevant due process considerations, adequate notice must be given to all Absent Class Members to enable them to make an intelligent choice as to whether to opt-in or opt-out of the Class. The notice, in turn, is necessary so that due process and Rule 23 requirements of notice and the right to be heard in court are achieved before a Settlement is considered for Final Approval. Where the Settlement Class is certified pursuant to Rule 23(b)(3), the notice also must be the "best notice that is

practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Plaintiff submits that the proposed Notice Plan meets the requirements of Fed. R. Civ. P. 23(c)(2)(B).

The Notice Plan satisfies each of these requirements and is the best Notice practicable. It states the nature of the action, the Settlement Class definition, the Class Claims, and the issues and defenses. It also states that a Settlement Class Member may enter an appearance through counsel, may elect to opt-out of the Settlement Class, and that the Settlement, if and when approved, will be binding on all Settlement Class Members who do not opt-out. The Notice further sets forth the terms of the Proposed Settlement and the right of each Settlement Class Member to object to the Proposed Settlement. See Rule 23(e)(4)(A). It summarizes the nature of the pending litigation and the Settlement's essential terms. It also informs the Settlement Class, among other things, that complete information regarding the Settlement is available upon request from Class Counsel and that any Settlement Class Member may appear and be heard at the hearing on final approval of the Settlement. In addition, the Class Notice informs the Class Members of the request for the award of attorneys' fees and reimbursement of litigation expenses by Class Counsel. Fed. R. Civ. P. 23(h).

Here, the Parties propose that, at a minimum, the Settlement Administrator shall utilize the national change of address database to update the mailing list of Class Members and send direct mail and/or email notice to any Settlement Class Member for whom street addresses and/or email addresses can be obtained with reasonable effort. *See* Settlement Agreement Section III. Additionally, the Settlement Administrator shall post information concerning the Settlement on the Settlement Website, and notice will be provided by online publication. *See* Exhibits 3 and 4. Finally, the Settlement Administrator will ensure the

creation of a constitutionally sufficient notice program to reach 80% of the Proposed Class. *See* Exhibits 3 and 4. The FJC guide indicates that "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70-95%."[1] The tactics and channels to be used include programmatic display advertising on contextually related sites and apps to target audiences, targeted interest social media advertising, online video ads on targeted audience segments, and relevant keyword paid searches. The Long Form Notice, Post Card Notice and Claim Form are attached as Exhibits to the Settlement Agreement. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See, e.g.*, 4 *Newberg On Class Actions* (Fourth) §§ 8.21, 8.39; *Manual Fourth* §§ 21.311- 21.312.

### 4. THE COURT SHOULD SET A SCHEDULE FOR THE FINAL APPROVAL AND APPROVE THE PROPOSED TIMELINE

Plaintiff requests that the Court set a final fairness hearing to consider whether to grant Final Approval of the Settlement. *Manual for Complex Litigation* (Fourth) § 21.634 (2004). At the fairness hearing, Plaintiff will request that the Court finally approve the Settlement.

### 5. THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL AS CLASS COUNSEL

A court certifying a class generally must appoint class counsel. See Fed. R. Civ. P. 23(g)(1)(A). The Rule sets forth several factors for court's consideration: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3)

---

[1] https://www.americanconference.com/consumer-finance-class-actions-litigation-656l14-chi/wp-content/uploads/sites/1673/2016/08/RICHTER.S.Judges_Class_Action_Notice_and_Claims_Process_Checklist.pdf

counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. See Fed R. Civ. P. 23(g)(1)(A). In addition, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Here, Plaintiff requests that Migliaccio & Rathod LLP, Robert Peirce & Associates, P.C and the Law Offices of Robert Mackey be appointed Class Counsel. As more thoroughly explained above, these law firms have diligently litigated this action and, after investigation, negotiated a fair settlement. Moreover, these law firms' credentials in class litigation are substantial.

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiff respectfully request that the Court: (1) preliminarily approve the Proposed Settlement Agreement pursuant to Fed. R. Civ. P. 23 (c) and (e); (2) preliminarily certify each of the Proposed Settlement Classes; (3) approve the Proposed Class Notice and Forms; (4) set the deadlines for filing Claim Forms, Opt-out forms, and Objections to the Settlement; (5) appoint Class Counsel, and (6) schedule a Fairness Hearing to consider Final Approval of the Proposed Settlement, and approval of Attorneys' Fees, Expenses and Service Awards.

Dated: January 20, 2023                           Respectfully submitted,

                                                  */s/ Nicholas A. Migliaccio*
                                                  Nicholas A. Migliaccio, Esquire
                                                  D. Md. Bar No. (MD Bar No. 29077)
                                                  Jason S. Rathod, Esquire
                                                  D. Md. Bar No. (MD Bar No. 18424)
                                                  Migliaccio & Rathod LLP
                                                  412 H Street N.E., Suite 302
                                                  Washington, D.C. 20002
                                                  Tel: (202) 470-3520

nmigliaccio@classlawdc.com
jrathod@classlawdc.com

D. Aaron Rihn, Esquire*
Robert Peirce & Associates, P.C.
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Tel. (412) 281-7229
arihn@peircelaw.com

Robert Mackey, Esquire*
Law Offices of Robert Mackey
P.O. Box 279
Sewickley, PA 15143
Tel. (412) 370-9110
bobmackeyesq@aol.com


*admitted pro hac vice*

**Attorneys for Plaintiff and the Putative Class**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of January 2023, a true and complete copy of the foregoing Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement was served via electronic mail on all counsel of record via the Court's ECF system.

*/s/ Nicholas A. Migliaccio*
Nicholas A. Migliaccio