**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| DANIEL METAGUE, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>WOODBOLT DISTRIBUTION, LLC, d/b/a NUTRABOLT,<br><br>       Defendant. | Case No: 8:20-cv-02186-PX |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
<u>PAYMENT OF SERVICE AWARD, ATTORNEYS FEES, COSTS, AND EXPENSES</u>**

Plaintiff Daniel Metague, on behalf of himself and all others similarly situated,

(hereinafter, "Plaintiff"), by and through his undersigned attorneys, respectfully submits this

Memorandum of Law in support of his unopposed Motion for Final Approval of Class Action

Settlement.

## I.     INTRODUCTION

Plaintiff respectfully requests that this Honorable Court enter an Order granting final

approval of the Settlement Agreement (the "Settlement") and certifying a class for settlement

purposes only, and enter a final judgment dismissing the case with prejudice.[1] A copy of the

Proposed Final Approval Order is attached as Exhibit A. Consistent with the terms of the

Settlement, the Defendant does not oppose this requested relief.

---

[1] The Settlement was submitted with Plaintiff's Motion for Preliminary Approval of Class Action
Settlement and is set forth at Doc. No. 61. The capitalized terms used in this Memorandum are
defined in Section II of the Settlement.

The Settlement was preliminarily approved on January 24, 20de23. (Doc. No. 63). As discussed below, the terms of the Settlement create substantial benefits for the Settlement Class; are fair, reasonable and adequate; and meet all of the requisite criteria under Fed. R. Civ. P. 23(e) for receiving final approval. Indeed, the overwhelmingly positive response by Settlement Class Members confirm that granting final approval is warranted. As discussed below, *there are no objections or opt-outs to the Settlement*. As such, Plaintiff respectfully request that the Court grant the within Motion for Final Approval of the Settlement.

## II.    BACKGROUND

### A.  History of Litigation

This is a class action case wherein Plaintiff Daniel Metague alleged that Defendant Woodbolt engaged in misleading and deceptive practices in its manufacture and sale of nutritional powders containing branched-chain amino acids (hereinafter referred to as "BCAAs") called "XTEND® Energy" (hereinafter "XTEND Energy" and/or "the Product(s)"). Woodbolt marketed, labeled, and sold these Products as containing "0 calories." However, Plaintiff has analyzed and evaluated the Products and confirmed that they contain between 30-50 calories per serving. Woodbolt's practices of falsely advertising the calorie content of the Product injured Plaintiff and the Proposed Class as they purchased a product containing far more than the advertised "0 calories."

Plaintiff filed the operative Amended Complaint in this case on January 28, 2021, alleging violations of the Maryland Consumer Protection Act ("MCPA") and other common law causes of action. *See generally* Amended Complaint, Jan. 28, 2021, Doc. # 16. The Amended Complaint seeks certification of a class for all persons who purchased Woodbolt's Product from June 5, 2017 through the present and a sub-class for all persons who purchased Woodbolt's

Product in Maryland from June 5, 2017 through the present. *Id.* Thereafter, Woodbolt filed a Motion to Dismiss on February 26, 2021 primarily arguing that Plaintiff's claims were preempted by federal law because Plaintiff was attempting to impose a standard different from that required by federal law regarding the calculation of nutrient content. *See* Motion to Dismiss, Feb. 26, 2021, Doc. # 19. Defendant's secondary argument was that Plaintiff did not have standing to pursue claims on behalf of the Proposed Class Members in different states other than Plaintiff's state of Maryland. *Id.* Finally, within its Motion to Dismiss, Defendant requested that the Court dismiss several of Plaintiff's state law claims pursuant to Rule 12(b)(6) and 9(b). *Id.* On April 5, 2021, Plaintiff filed his Response in Opposition to Woodbolt's Motion to Dismiss. On June 16, 2021, the Court issued its Memorandum Opinion on Woodbolt's Motion to Dismiss. See Memorandum Opinion on Motion to Dismiss, June 16, 2021, Doc. # 24. The Court denied Woodbolt's Motion to Dismiss in part and granted it in part. While the Court dismissed a few of Plaintiff's common law causes of action, the Court primarily upheld Plaintiff's Amended Complaint.

After Defendant answered Plaintiff's Amended Complaint, the Parties filed a Joint Motion to Stay the proceeding on July 26, 2021, in order for the Parties to attempt to resolve this matter. On September 28, 2021, Plaintiff and Woodbolt participated in an all-day mediation with the Honorable Jose L. Linares (Ret.) of McCarter & English. After months of shuttle diplomacy conducted by Judge Linares, the Parties reached a Proposed Settlement with respect to all claims involving Woodbolt in this action, which is reflected in the Settlement.

### B.  Terms of the Settlement Agreement

The proposed Settlement Class has been provisionally certified to include:

> All persons, other than Excluded Persons, who, during the Class Period purchased in the United States, at least one of the Products, including, but

not limited to, the XTEND Products set forth in Paragraph 2.39 of the
Settlement Agreement, Ex. D, from within six (6) years prior to the filing
of the action to January 24, 2023.

As described further below, the proposed Settlement will provide substantial benefits and

value to the Settlement Class Members if the Court enters the Final Approval Order.

With proof of purchase, Settlement Class Members may seek reimbursement of fifty

cents ($0.50) per package for every Product purchased during the Class Period, for which they

can present written proof of purchase in the form of a receipt or similar documentation showing

purchase of an XTEND product with an anticipated maximum recovery of fifty dollars ($50.00)

per household.

Without proof of purchase, Settlement Class Members may make a claim for every

Product for which they submit a Valid Claim Form. Settlement Class Members may seek

reimbursement at fifty cents ($0.50) per package for every Product purchased during the Class

Period, with an anticipated maximum recovery of twenty-five dollars ($25.00) per household.

The actual amount that will be provided to Settlement Class Members in each category will

be subject to a pro-rata distribution dependent upon the number of valid claims as determined by

the claims administrator.

### C.  The Notice and Claims Process

In accordance with the Settlement Agreement, the Parties engaged the Kroll Settlement

Administration LLC ("Kroll" and/or "Settlement Administrator") as the Claims Administrator,

with responsibility for class notice and settlement administration. *See* Settlement Agreement § III.

1.    CAFA Notice

In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, on January

26, 2023, the Settlement Administrator sent CAFA Notices via first class certified mail to (a) the

Attorney General of the United States and (b) fifty-six (56) state Attorneys General identified in the service list for the CAFA Notice, attached to the Declaration of Scott Fenwick ("Fenwick Dec.") ¶ 4, attached hereto as Exhibit B. The CAFA Notice directed the Attorney Generals to the website www.CAFANotice.com, a website that contains all the documents relating to the Settlement.

2.     Class Notice

On January 4, 2023, Defendant provided Kroll with a data file containing 28,766 total records including: full name, email address, and/or billing address for Settlement Class Members. *See* Fenwick Dec., ¶ 8. After analyzing the data and removing duplicative records, Kroll identified 28,206 unique records, of which 28,206 records included an email address and 28,186 records included a physical mailing address. *Id.* An email search was then conducted to locate mailing addresses for the remaining twenty (20) Settlement Class Members. *Id.* The email search located an additional nine (9) mailing addresses. *Id.* Thus, including the nine (9) mailing addresses resulting from the email search, 28,195 records ultimately had a physical address, and eleven (11) records had no physical mailing address. *Id.* Additionally, in an effort to ensure that notices would be deliverable to Settlement Class Members, Kroll ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id.*

On February 23, 2023, Kroll caused the Email Notice to be sent to the 28,206 email addresses on file for Settlement Class Members. Fenwick Dec., ¶ 10. On February 24, 2023, Kroll caused 28,195 Postcard Notices to be mailed via first class mail to the addresses on file for Settlement Class Members.  Fenwick Dec., ¶ 11. As of May 23, 2023, four (4) Postcard Notices were returned by the USPS with a forwarding address. The four (4) Postcard Notices were

automatically re-mailed to the updated addresses provided by the USPS. Fenwick Dec., ¶ 13. As of May 23, 2023, 1,077 Postcard Notices were returned by the USPS as undeliverable as addressed, without a forwarding address. *Id.* Kroll conducted an initial advanced address search of 1,077 undeliverable records. *Id.* The initial advanced address search produced 825 updated addresses. Kroll has re-mailed Postcard Notices to the 825 updated addresses obtained from the initial advanced address search. Kroll will conduct further advanced address searches for any future returned notices received and will continue to re-mail Postcard Notices as appropriate. *Id.*

In addition to the Direct Mail Notice, on December 23, 2022, Kroll established a Settlement Website to serve as additional resources for Settlement Class Members. Fenwick Dec., ¶ 7. The Settlement Website, www.XTENDCalorieSettlement.com, is dedicated to this matter to provide information to the Settlement Class Members, to answer frequently asked questions and file a claim. Fenwick Dec., ¶ 7. Visitors to the Settlement Website can download Notice and other case-related documents. *Id.* The website also allowed for Settlement Class Members to submit their Claim Forms online as well as exclude themselves from the Settlement. *Id.*

Further, on October 5, 2022, Kroll established a toll-free number for Settlement Class Members to utilize to obtain additional information regarding the settlement. Fenwick Dec., ¶ 7. Specifically, the toll-free telephone hotline, (833) 709-0897, was established and is maintained for potential Settlement Class Members to call and obtain information about the Settlement, request a Notice, and/or seek assistance from an Interactive Voice Response ("IVR") system. *Id.* As of May 23, 2023, the toll-free number has received 167 calls. *Id.*

        3.      Claims, Exclusions, and Objections

Settlement Class Members had until April 24, 2023 to either exclude themselves from or object to the Settlement. Fenwick Dec., ¶ 19. To date, Kroll has not received any requests for exclusion, opt-out requests, or objections. *Id.*

As of May 23, 2023, Kroll has received 384 timely Claim Forms through the mail and 686,727 Claim Forms filed electronically through the Settlement Website. Fenwick Dec., ¶ 15. The claims filing rate exceeded the amount of claims anticipated, and Kroll suspected that the aforementioned high rate was the result of suspicious online claim filing activity. Fenwick Dec., ¶ 16. In consultation with Class Counsel and Defense counsel, Kroll performed a detailed preliminary review to determine which, in any, of the 687,130 claims were invalid or fraudulent. *Id.* Kroll performed an extensive review for suspicious claims by identifying: (1) known suspicious email addresses; (2) duplicate payment destinations; (3) identical IP addresses; (4) claims filed by multiple individuals in the same household; and (5) suspicious email domains. *Id.* After conducting this thorough review, Kroll identified 555,347 claims as having sufficient indicia of fraud to reject as invalid. *Id.* Kroll is continuing to carefully review the remaining claims, and filers of additional suspicious claims, with approval of counsel, will be sent a communication requesting identity or other verification through an online portal. *Id.*

        4.      Claims Processing and Payment

As explained above, the Settlement Administrator is responsible for reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members. Settlement Agreement ¶ 3.16. After the Settlement is approved and the time for any appeal has passed, the Settlement Claims Administrator will also be responsible for processing and

transmitting Settlement Class Member payments for those Class Members who made a claim for benefits. *Id* ¶ 8.3.

### III.     ARGUMENT

### A.  The Settlement is Fair, Reasonable, and Adequate

Before granting final approval to a class action settlement, courts are directed to evaluate whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Marketing, Sales Practices and Prods. Liab. Litig.*, 952 F.3d 471, at 484 (4th Cir. 2020) ("*In re: Lumber Liquidators*"). The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (citing cases). "The 'fairness' prong is concerned with the procedural propriety of the proposed settlement agreement, while the 'adequacy' prong focuses on the agreement's substantive propriety." *Alloways*, 2019 WL 1902813, *8.

### 1.  *Fairness of the Settlement*

Courts look to four factors when analyzing the fairness of a proposed class action settlement: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation." *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 478; *In re: Lumber Liquidators*, 952 F3d at 484. The court must determine whether "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Alloways*, 2019 WL 1902183, at *9 (citing *In re Jiffy Lube*, 927 F.2d at 158-59.) The fairness factors weigh in favor of final approval of the Settlement.

Regarding the first two factors, the posture of the case at the time Plaintiff proposed the settlement and the amount of discovery conducted, both support final approval. After overcoming the Defendant's Motion to Dismiss, the Parties analyzed their respective risks in furthering litigation and made the reasonable decision to enter settlement discussions. Thereafter, the parties exchanged confidential discovery pursuant to Fed. R. Evid. 408 for several months until they finally reached a resolution. Further, Plaintiff consulted with industry experts throughout the process of litigation.

As for the third factor, the circumstances surrounding the negotiations also support final approval. On September 28, 2021, Plaintiff and Woodbolt participated in an all-day mediation with the Honorable Jose L. Linares (Ret.) of McCarter & English. After months of shuttle diplomacy conducted by Judge Linares, the Parties reached a Proposed Settlement. The aforementioned negotiations were all conducted at arms' length by experienced counsel for the parties and an experienced mediator that required substantial time and effort. *See*, *e.g.*, *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-400-BR, 2009 WL 2208131, at *24 (E.D.N.C. July 22, 2009) (observing the "extended nature" of the settlement negotiations supported fairness of settlement).8 As such, the circumstances surrounding the negotiations supports final approval of the Settlement. *See*, *e.g.*, *In re Am. Capital Shareholder Derivative Litig.*, 2013 WL 3322294, at *4 (noting negotiations between counsel were "appropriately adverse and at arms' length"); *G. F. v. Contra Costa Cty.*, No. 13-CV-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

The final factor, the experience of counsel in class action litigation, also supports final approval of the Settlement. As detailed in Plaintiff's Motion for Preliminary Approval, Class

Counsel have substantial experience in consumer class action litigation. *See* Firm Resumes of Class Counsel, attached as Exhibits to Plaintiff's previously filed Motion for Preliminary Approval, Doc. No. 61. Class Counsel believe the Settlement offers substantial relief to the Settlement Class Members and that the prompt and certain relief of the Settlement outweighs the years of contested litigation that will result in the absence of settlement.

        2.  *Adequacy of the Settlement*

Regarding adequacy, courts evaluate the following factors: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re: Lumber Liquidators*, 952 F.3d at 484 (citing *In re Jiffy Lube*, 927 F.2d at 159).

Regarding the first three factors, if Plaintiff were to continue to pursue litigation, Plaintiff is confident that he could demonstrate that the Products contained far more than the "0 calories" Defendant advertised. Thus, Plaintiff would be in a position to mount a case that Defendant breached numerous state and federal contract and warranty laws as well as violated consumer protection laws. Nevertheless, Class Counsel are seasoned in consumer protection class litigation, and recognize that even seemingly strong cases can sometimes fail on liability or be whittled down after trial and appeals. Defendant, of course, would vigorously defendant it's Products and representations regarding the same. Ultimately, a victory at trial, coming several years from now, would likely not deliver results superior to the Settlement before the Court.

In addition, class actions typically entail a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through

settlement. *Reed v. Big Water Resort*, LLC, No. 2:14-CV-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016 ("There is a 'strong judicial policy in favor of settlements, particularly in the class action context.'") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). If the parties had been unable to resolve this case through settlement, the litigation would likely have been protracted and costly. Class Counsel have litigated many consumer class actions that have taken several years to conclude, and some have lasted over a decade factoring in appeals. Before ever approaching a trial in this case, the parties likely would have briefed at least a class certification Motion (along with a potential Rule 23(f) appeal), and summary judgment, in addition to expending considerable resources on electronic discovery, depositions, and expert witnesses. It is therefore unlikely that the case would have reached trial within a year, with post-trial procedures to follow.

As for the fourth factor, Defendant's solvency and ability to perform its duties under the Settlement are not in question. As such, Plaintiff respectfully submits that this factor is neutral. *See*, *e.g.*, *Decohen*, 299 F.R.D. at 480.

Lastly, the degree of opposition to the settlement strongly supports final approval. As courts within the Fourth Circuit have recognized, the response by the class is entitled to great weight. *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 245 (S.D. W. Va. 2005) (citation omitted). Here, *there are no objections to the Settlement and no opt-outs* that were timely post-marked on or before April 24, 2023, or any received at all. In sum, the lack of opposition to the Settlement weighs in favor or final approval. *In re Lumber Liquidators*, 952 F.3d at 485 ("Finally, only 94 of the 178,859 class members who responded to the class-action settlement notice opted out of the settlement (about 0.05%), and 12 class members objected thereto (about 0.006%). Those figures provide further support for the settlement's adequacy."); *Alloways*, 2019

WL 1902813, at *10 (finding no objection and small number of opt-outs favored approval of

settlement); *McDaniels*, 2014 WL 556288, at *10 (same); *Edelen v. Am. Residential Servs.*, LLC,

No. 11-cv-2744-DKC, 2013 WL 3816986, at *10 (D. Md. July 22, 2013) ("The lack of

objections provides further support for final approval of the Settlement Agreement as fair,

adequate, and reasonable.").

### B.  The Notice Satisfied Due Process

The Settlement Administrator has successfully implemented the Notice Plan as described

in the Settlement. As more fully set forth in the accompanying Declaration of Scott M. Fenwick,

Senior Director of Kroll Settlement Administration LLC, the Settlement Administrator

established a dedicated website, www.XTENDCaloriesSettlement.com, which "went live" on

February 22, 2023, and contains details of the Settlement, frequently asked questions, contact

information for the Settlement Administrator and Class Counsel, the Settlement Agreement and

corresponding Court documents. Fenwick Dec., Ex. C. In addition to being a source of

information about the Settlement, the aforementioned website also allowed for Settlement Class

Members to file a Claim Form online. *Id.* The Settlement Administrator further established a toll-

free number and email address that Settlement Class Members are able to utilize to answer any

questions they may have about the Settlement or need assistance in filling out the Claim Form.

*Id.*

The Settlement Administrator sent direct notice to 28,195 and 28,206 Settlement Class

Members via postcard notices and emails, respectively. *See* Fenwick Dec., Ex. C. Additionally,

as more fully set forth in the accompanying Declaration of Jeanne Finegan, Managing Director

and Head of Kroll Notice Media Solutions, the Media Notice Plan employed best-in-class tools

and technology and optimizations to obtain an estimated 77% reach of potential Class Members

nationwide with an average frequency of 5.3 times. *See* Declaration of Jeanne Finegan ("Finegan Dec."), attached hereto as Exhibit C. Specifically, the Medica Notice Plan included: (1) online display banner advertising targeted to reach Settlement Class Members; (2) keyword search advertising targeted to Settlement Class Members; and (3) social media advertising through Facebook, Instragram, and YouTube. *Id.*

In sum, the Notice program unquestionably meets the due process requirements of Fed. R. Civ. P. 23, which calls for "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (emphasis omitted); *see also Brunson v. Louisiana-Pac. Corp.*, 818 F. Supp. 2d 922, 926 (D.S.C. 2011) (granting final approval to settlement and noting notice provided for in preliminary approval order satisfied due process). In this regard, potential Settlement Class Members have been (i) provided with notice of the Settlement Agreement; (ii) fully informed of their rights and obligations under the Settlement Agreement; and (iii) provided with the resources to ask questions and, to the extent necessary, receive assistance in submitting Claim Forms. As such, the notice was reasonably calculated to apprise the Settlement Class of their rights in this Lawsuit.

**C.  Certification of the Settlement Class Remains Warranted under Rule 23**

In the Preliminary Approval Order, the Court granted Plaintiff's Motion for Preliminary Approval of the Settlement and certified the Class for settlement purposes pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. (ECF No. 63). The Class continues to meet the requirements set forth by Fed. R. Civ. P. 23. Nothing has changed to alter these findings, and for all the reasons stated in Plaintiff's preliminary approval brief, incorporated

herein by reference, Plaintiff requests that the Court grant final certification of the Class pursuant to Rules 23(a) and (b)(3).

**D. Class Counsel's Request for Attorneys' Fees, Costs and Expenses is Reasonable and Should be Approved.**

Pursuant to Rule 23(h) and Rule 54(d)(2), Class Counsel seeks an award of attorneys' fees, costs, and expenses in the amount of $1,000,000, or one-third of the common fund created by the Settlement. Defendant agreed not to oppose Class Counsel's application to be paid up to this amount from the Settlement Fund. As detailed below, the request for one-third of the settlement fund, is reasonable and well within the range approved by courts in similar litigations, and, specifically, falls squarely in the accepted range typically awarded in class action settlements in the Fourth Circuit.

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in achieving this settlement on behalf of the Settlement Class. It is recognized that a party that has secured a benefit on behalf of a class of people is entitled to recover its costs, including attorneys' fees, from a common fund created as part of a settlement agreement. *See Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); Fed. R. Civ. P. 23(h) (stating that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). There are two methods commonly used for calculating an attorney's fee award: the lodestar method and the "percentage of recovery" method. *See Decohen*, 299 F.R.D. at 481\. District courts in the Fourth Circuit, and the majority of courts in other jurisdictions, use the percentage of recovery method in common fund cases. *Id.; see also Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 568 (D.S.C. 2015) (In the Fourth Circuit, "the percentage-of-recovery approach is not only permitted but is the preferred approach to determine attorney's fees" in class actions). This method aligns the interests of class counsel and class members because it "ties the

attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *Jones v. Dominion Res. Servs. Inc.*, 601 F. Supp. 2d 756, 758-59 (S.D. W. Va. 2009).

District courts commonly use seven factors when evaluating a fee request: (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy. *Decohen*, 299 F.R.D. at 481. Importantly, "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *In re AT & T Corp.*, 455 F.3d 160, 166 (3d Cir.2006) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3rd Cir.2005)).

### 1. *The Results Obtained for the Class*

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *McKnight v. Circuit City Stores, Inc.*, 14 Fed. App'x 147, 149 (4th Cir. 2001). Here, the proposed settlement provides tremendous benefits to the Settlement Class. Settlement Class Members are eligible to obtain the recovery detailed above from the $3,000,000 common fund. While the claims administrator is still evaluating the claims and pro-rata adjustments may be made, Plaintiffs estimate that each Settlement Class Member with proof of purchase will receive fifty cents ($0.50) per package for every Product purchased during the Class Period with an anticipated maximum recovery of fifty dollars ($50.00) per household, and each Settlement Class Members without proof of purchase will receive fifty cents ($0.50) per package for every Product purchased during the Class Period, with an anticipated maximum recovery of twenty-five dollars ($25.00) per household.

Accordingly, there is no question that the settlement represents a significant recovery for the Settlement Class. As such, this factor supports approval of Class Counsel's fee request.

2. *The Quality, Skill, and Efficiency of the Attorneys*

Class Counsel have significant experience in the area of consumer class actions who have invested substantial time and resources into the prosecution of this litigation. *See* Migliaccio Declaration ("Migliaccio Dec."), Rihn Declaration ("Rihn Decl."), and Mackey Declaration ("Mackey Dec."), attached hereto as Exhibits D – F respectively; *see also* Doc. No. 61. They have served as Class Counsel in numerous class and collective actions, including many consumer class action cases. *Id.* Through this experience, Class Counsel were able to negotiate the settlement in this litigation that confers the benefits described above. *Decohen*, 299 F.R.D. at 481 (observing "class counsel have significant experience in consumer class action litigation . . ."). Class Counsel respectfully submit that their submissions to the Court were of high quality and that they vigorously pursued recovery for the class. As such, this factor supports approval of Class Counsel's fee request.

3. *The Risk of Nonpayment*

The risk of nonpayment is significant. Class Counsel "undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts. Courts recognize the risk of non-payment as a factor in considering an award of attorneys' fees." *In re Datatec Sys. Sec. Litig.*, No. 04-CV-525, 2007 U.S. Dist. LEXIS 87428, * 20 (D.N.J. Nov. 28, 2007); *see also Fangman v. Genuine Title, LLC*, No. 14-0081, 2017 WL 2591525, at *5 (D. Md. June 15, 2017) (observing that, despite risks and "looming uncertainty" of success, class counsel were able to achieve a substantial settlement which supported approval of requested fee.); *Decohen*, 299 F.R.D. at 482 (approving fee request in part because of contingent fee nature of case and because "defendants vigorously contested their liability"). Thus, this factor also supports Class Counsel's requested fee.

4.  ***Objections by Members of the Class***

As noted above, Settlement Class members received notice of the Settlement terms, including those terms setting out the amount of attorneys' fees.  *No objections or opt-outs* have been filed. The dearth of objections supports approval of the requested fee. *Decohen*, 299 F.R.D. at 481 (finding that "no one has objected to the settlement or opted out of the class" supported fee request); *Fangman*, 2017 WL 2591525, at *5 (same) (citing Singleton v. Domino's Pizza, LLC, 976 F. Supp. 2d 665, 681 (D. Md. 2013) ("The lack of objections tends to show that at least from the class members' perspective, the requested fee is reasonable for the services provided and the benefits achieved

5.  ***The Complexity and Duration of the Case***

This complex class action litigation has been contentious and has required extensive work by Class Counsel for approximately nearly three years. Specifically, in connection with the present action, Class Counsel (1) investigated the facts and law relating to Plaintiff's claims, and those of the putative class, before initiating this action; (2) drafted a well-pleaded Complaint and subsequent Amended Complaints which modified the claims at issue; (3) met and conferred with Defendant's counsel at the start of the case and assisted in preparing a Rule 26(f) Report to the Court; (4) briefed, and largely prevailed on, a motion to dismiss Plaintiff's claims; (5) negotiated, with Defendant, a discovery plan; (6) reviewed each of the documents (as well as the information) produced by Defendants in this case; (7) worked diligently to create a detailed damages model; (8) prepared a lengthy mediation statement; (9) attended a full day of mediation and multiple subsequent hours of shuttle diplomacy over the course of months; (10) negotiated the details of a comprehensive Settlement Agreement and drafted the Settlement Agreement; (11) prepared the exhibits to the Settlement Agreement (including the Class Notice, Claim Form,

and proposed Preliminary Approval Order); (12) prepared a motion for preliminary approval of

the Settlement; (13) conducted a bidding process for the prospective claims administrator, and

regularly communicated with the Claims Administrator to ensure a smooth notice and claims

process following the Court's preliminary approval order; (14) reviewed the language and

content of the settlement website; (15) responded to Class Members who contacted Class

Counsel directly or who were forwarded to Class Counsel by the Claims Administrator; (16)

communicated with the Settlement Representatives and Collective Action members throughout

the litigation; and (17) prepared the present motion.  *See* Migliaccio Dec., *¶* 3, Rihn Dec., ¶ 2,

Mackey Dec., ¶ 2.

Several courts have also recognized that consumer protection class actions present

significant risks, including risks related to choice of law and class certification. *See, e.g.*, *Thomas*

*v. FTS USA, LLC*, No. 3:13CV825 (REP), 2017 WL 1148283, at *2 (E.D. Va. Jan. 9, 2017),

*report and recommendation adopted*, No. 3:13CV825, 2017 WL 1147460 (E.D. Va. Mar. 27,

2017) ("Class counsel play a vital role in protecting the rights of class members. . . . Class

counsel help protect consumers by enforcing the rights created by the FCRA and other consumer

protection statutes."); *Decohen*, 299 F.R.D. at 482 (finding "although the litigation did not

involve extensive discovery or motions practice, the uncertainty and difficulty of the issues,

length of litigation, and intensity of settlement negotiations favor the requested award").

Accordingly, the complexity and duration of this litigation weighs in favor of approving

Class Counsel's fee request.

### 6.   *Public Policy*

Public policy favors the requested award. Courts are to balance "the policy goals of

encouraging counsel to pursue meritorious . . . consumer litigation . . . while also protecting

against excessive fees." *Decohen*, 299 F.R.D. at 482 (quoting *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011). As this court has recognized, "[t]he most frequent complaint surrounding class action fees is that they are artificially high, with the result (among others) that plaintiffs' lawyers receive too much of the funds set aside to compensate victims." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 466 (D. Md. 2014) (internal quotation marks and citation omitted). In order to properly balance the public policy encouraging meritorious consumer litigation while protecting against overcompensation, courts ensure that "the requested fee-award is in-line with those awarded in consumer class actions involving a similar degree of complexity and risk to counsel." *Decohen*, 299 F.R.D. at 482 (citation omitted).

Here, the requested fee is similar to other class action cases approved in the Fourth Circuit. Moreover, the substantial benefits offered through the settlement establish that this litigation was meritorious from the onset and achieved its goal of protecting purchasers of allegedly mislabeled nutritional supplements. In short, public policy supports the requested fee.

7. ***Awards in Similar Cases***

A review of similar cases demonstrates that the fee request here is reasonable and appropriate. "Many courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund is reasonable." *See Chrisman v. Meadow Greens Pizza*, No. 5:19-cv-155-BO, 2020 U.S. Dist. LEXIS 119873, at *12 (E.D.N.C. July 7, 2020) (collecting authority and approving one-third fee award); *see also Decohen*, 299 F.R.D. at 480 (D. Md. 2014) (approving one-third fee in a $3,050,000 million common fund settlement); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 505-06 (M.D.N.C. 2018) ("The requested 33.39 percent award is within the range of percentages that have been approved in

other cases in this circuit."); *Starr v. Credible Behavioral Health, Inc.*, No. 20-2986 PJM, 2021 U.S. Dist. LEXIS 99783, at *15 (D. Md. May 25, 2021) ("A request for one-third of a settlement fund is common in this circuit and generally considered reasonable") (citing *Kirkpatrick*, *supra*). Accordingly, Plaintiff's requested fee is for a one-third of the common fund is consistent with awards in similar cases.

A cross-check here further supports a finding of reasonableness of the requested fee. When the lodestar method is used only as a cross-check, the "exhaustive scrutiny" normally required by that method is not necessary. *Decohen*, 299 F.R.D. at 482-83 (citing authority); *see also Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 688 (D. Md. 2013) (same); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here used as a mere cross-check . . . the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case.") "Thus, the Court may accept as reasonable class counsel's estimate of the hours they have spent working on the case." *Decohen*, 299 F.R.D. at 482-83 (citing *Jones v. Dominion Res. Servs., Inc.,* 601 F. Supp. 2d 756, 766 (S.D.W. Va. 2009)).

To date, Class Counsel have spent over 887 hours prosecuting this action. *See* Declarations of Class Counsel (Exhibits D – F). As detailed in Class Counsel's Declarations and Firm Resumes submitted in support of Plaintiff's Motion for Preliminary Approval (Doc. No. 61), Class Counsel have national class action practices. Courts within this district have approved rates between $1,060 and $490 per hour for attorneys and $330 per hour for paralegals and law clerks for firms with such experience. *See Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772, at *18-19 (D. Md. Jan. 28, 2020). Using Class Counsel's current rates, their current lodestar is $553,588 which will increase as a result of additional work that will be done relating to the claims process. *See* Declarations of Class Counsel, (Exhibits D – F).

The requested fee currently reflects a multiplier of 1.77. This multiplier is in the low range of range of multipliers commonly awarded by courts in the Fourth Circuit, and further demonstrates the reasonableness and fairness of Class Counsels' fee requests. *See Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439, n.6 (D. Md. 1998) (citing cases approving a 3.6 multiplier and observing average range of 3-4.5 multipliers for comparable cases); *Decohen*, 299 F.R.D. at 483 (approving 3.9 multiplier); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 262 (E.D. Va. 2009) (citing study reflecting that the average lodestar risk multiplier was 4.35); *George v. Duke Energy Ret. Cash Balance Plan*, No. 8:06-CV-00373-JMC, 2011 WL 13218031, at *9 (D.S.C. May 16, 2011) (collecting cases of lodestar multipliers between 4 and 8); *Nieman v. Duke Energy Corp.*, No. 3:12-cv-456-MOC-DSC, 2015 U.S. Dist. LEXIS 148260, at *4 (W.D.N.C. Nov. 2, 2015) ("A multiplie[r] of 4.5 would, in the circumstances of this case, be inappropriately too low."); *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL6305785, at *6 (M.D.N.C. Dec. 3, 2018) (approving 4.39 multiplier). Additionally, Class Counsel anticipate spending scores of additional hours working with the Settlement Administrator regarding the administration of the Settlement.

### E.  Class Counsel's Expenses Should be Approved.

"Plaintiffs entitled to recover attorney's fees may also recover 'reasonable litigation-related expenses as part of their overall award.'" *Decohen*, 299 F.R.D. at 483 (quoting *Singleton*, 2013 WL 5506027, at *17). These costs include reasonable out-of-pocket expenses that are normally charged to fee-paying clients in connection with their legal services. *Id.*

To date, Class Counsel has incurred a total of $17,785.23 in out-of-pocket expenses for the common benefit of the Settlement Class Members. *See* Migliaccio Dec., ¶ 8, Rihn Dec., ¶ 5. The requested expenses will be paid from the total $1,000,000 fee and expense request. Class

Counsel put forward these necessary out-of-pocket expenses without assurance they would ever be repaid. The requested amount is therefore reasonable and should be approved. *Boyd*, 299 F.R.D. at 468 ("Examples of costs that have been charged include necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying.") (citation omitted).

    **F.  The Requested Service Award Should Be Approved.**

    The service provided by the Plaintiff in this action should not go without financial recognition. While service as a representative plaintiff is not a profit-making position, the law recognizes that it is appropriate to make a modest payment in recognition of the services that such plaintiffs perform in successful class litigation. *Boyd*, 299 F.R.D. at 468-69 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.") (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Here, the settlement provides for a service award in the amount of $7,500 to Plaintiff. The result of this litigation would not have been achieved without the efforts of the Plaintiff. The Plaintiff was engaged during the litigation process and provided invaluable assistance to Class Counsel, including participating in numerous conferences and meetings with Class Counsel, searching for and producing documents that were relevant to his claims in the litigation, staying abreast of significant developments in the case, making himself available during the mediation to confer with Class Counsel, and reviewing and conferring with Class Counsel regarding the settlement agreement. *See* Migliaccio Decl., ¶ 8. Under these circumstances, Plaintiff's service award should be approved. *See Decohen*, 299 F.R.D. at 483 (approving $10,000 incentive award); *Boger v. Citrix Sys., Inc.*, Civil Action No. 19-cv-01234-LKG, 2023 U.S. Dist. LEXIS 16857, at *23 (D. Md. Jan. 31, 2023) (preliminarily approving

$10,000 service payments). As such, Plaintiff respectfully requests that the Court approve the $7,500 service award here.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter the accompanying Proposed Order Granting Final Approval to the Settlement and Payment of Service Awards, Attorneys Fees, Costs, and Expenses.

Dated: May 26, 2023                    Respectfully submitted,

*/s/ Nicholas A. Migliaccio*
Nicholas A. Migliaccio, Esquire
D. Md. Bar No.
Jason S. Rathod, Esquire
D. Md. Bar No.
Migliaccio & Rathod LLP
412 H Street N.E., Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

D. Aaron Rihn, Esquire*
Sara J. Watkins, Esquire*
Robert Peirce & Associates, P.C.
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Tel. (412) 281-7229
arihn@peircelaw.com

Robert Mackey, Esquire*
Law Offices of Robert Mackey
P.O. Box 279
Sewickley, PA 15143
Tel. (412) 370-9110
bobmackeyesq@aol.com

*\* admitted pro hac vice*

23

*Attorneys for Plaintiff and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of May 2023, a true and complete copy of the foregoing Plaintiff's Memorandum of Law in Support of his Unopposed Motion for Final Approval of Class Action Settlement was served via ECF upon all counsel of record.

*/s/ Nicholas A. Migliaccio*